645 A.2d 226

COMMONWEALTH of Pennsylvania, Appellee,

v.

Robert DOUGLAS, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 18, 1993.

Resubmitted May 16, 1994.

Decided Aug. 3, 1994.

Joseph J. Marinaro, Philadelphia, for R. Douglas.

Catherine Marshall, Ronald Eisenberg, Hugh J. Burns, Jr., Philadelphia, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION

MONTEMURO, Justice.

On January 20, 1983, a jury of the Court of Common Pleas of Philadelphia County found appellant, Robert Douglas, guilty of murder of the first degree [1], aggravated assault [2], and possession of an instrument of crime [3]. Following these convictions, a separate sentencing hearing was held pursuant to 42 Pa.C.S. § 9711(a). The jury subsequently found the existence of two aggravating circumstances [4] and no mitigating circumstances and sentenced appellant to death.

Post-trial motions were filed and the trial court ordered an *en banc* hearing on the motions. The court *en banc* found appellant's trial counsel ineffective for permitting the testimony of a probation officer which implied that appellant was involved in prior criminal conduct, and granted appellant a new trial. On appeal by the Commonwealth, the Superior Court reversed the trial court's decision, and remanded the case for a determination of appellant's remaining post-trial motions which had not been considered, 396 Pa.Super. 653, 570 A.2d 1086. Appellant now brings the present appeal. We affirm the holding of the Superior Court, and remand the case for consideration of the remaining issues raised in appellant's post-trial motions.[5]

1. 18 Pa.C.S. § 2502(a).

2. 18 Pa.C.S. § 2702.

3. 18 Pa.C.S. § 907.

4. The two aggravating circumstances found to exist by the jury were; (1) that appellant had a significant history of felony convictions involving the use or threat of violence to the person (42 Pa.C.S. § 9711(d)(9)), and (2) that in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense (42 Pa.C.S. § 9711(d)(7).

5. Due to the fact that this case must be remanded for consideration of the remaining issues raised in appellant's post-verdict motions, we need

The facts giving rise to this case are as follows: At approximately 3 a.m. on August 28, 1980, the victim, Donald Knight, and Michael McLaurin were sitting on the benches in the courtyard of the Raymond Rosen Housing Project in Philadelphia when they were approached by appellant who asked them for money. Knight and McLaurin responded that they had none and appellant left the scene. Appellant returned a few minutes later with a handgun and stated, "If you don't got no money, get out of here." Appellant then shot Knight twice killing him. McLaurin, meanwhile, reached for the gun but was shot by appellant in the upper and lower arm. After being shot, McLaurin was able to escape and flag down a passing police vehicle. Since he knew appellant well, he was able to give the officers appellant's name and address.

The officers, however, were unable to find appellant and he remained at large for nearly a year after the shooting. During this time the police encountered appellant on three separate occasions, but each time appellant was able to escape by threatening the officers with either a sawed-off shotgun or a handgun. In addition, on one occasion four days after Donald Knight's funeral, Knight's mother, Mildred Knight, encountered appellant on the street. Appellant taunted her, saying "I just killed Donald," and "you will be next." (Notes of Trial Testimony (N.T.T.), 1/14/83, at pp. 249, 289).

Appellant was ultimately apprehended and the case proceeded to a jury trial before the Honorable Marvin R. Halbert. At the time of trial, McLaurin could not be located and was determined to be unavailable. The Commonwealth, however, was able to introduce his preliminary hearing testimony in which he identified appellant as Donald Knight's killer. In addition, the Commonwealth introduced the testimony of the

not address the issues of the sufficiency of the evidence to sustain appellant's conviction for first degree murder and the issues enumerated in 42 Pa.C.S. § 9711(h). These issues may be reviewed in a direct appeal filed pursuant to 42 Pa.C.S. § 9711(h) in the event that the remainder of appellant's post-verdict motions are found not to constitute a basis for relief, and a judgement of sentence of death is formally imposed by the trial court. Thus, we will only address the issues raised in appellant's brief.

victim's mother and of two police officers who stated that following the shooting, appellant was chased twice on foot and in an automobile and that on each occasion, he brandished a weapon at his pursuers.

The only evidence presented by the defense was the testimony of appellant's probation officer, Norman Gay. Mr. Gay testified as follows:

Q. Good Morning, Mr. Gay

A. Good Morning.

Q. You [sic] state again who you are employed with please, or by?

A. Adult Probation Department, Gang Control Unit.

Q. How long have you been—that's for the City of Philadelphia; is that correct?

A. That's correct.

Q. How long have you worked for the Probation Department?

A. Approximately six years.

Q. Do you know the defendant Robert Douglas?

A. Yes, I do.

Q. How do you know him?

A. I was Robert Douglas' probation officer from approximately 6/28/77 until present.

Q. Do you remember or does your record reflect the charges that placed the defendant on probation?

A. You are speaking about his initial probation?

(N.T.T., January 18, 1983, pp. 490–491).

At this point the trial court interrupted the questioning and called counsel to sidebar. The court then inquired as to the purpose of this line of questioning. Defense Counsel replied that he wished to demonstrate that Douglas was "amenable to probation and that the death penalty was not warranted ..." (N.T.T., 1/18/83, p. 492). The trial court advised defense counsel that such evidence was irrelevant at that point in the proceedings and would only become relevant at the sentencing phase of the trial if appellant were convicted of first degree

murder. Defense counsel, however, noted that he felt he had an inference to overcome and went on to advise the court as follows:

Mr. Quinn: They have heard testimony from police officers that there was a gun chase. Franklin Morris testified to that, so this isn't his only case. I weighed that particular factor when I did this and made this decision. I'm not saying that there is an inference going to be drawn, but I think they have those inferences already.

If you say that I must hold it, then I will withdraw it and go no further and ask it be stricken then.

(N.T.T., 1/18/83, pp. 494–495).

The trial court then determined that this line of questioning was improper and advised the jury to disregard both the question and the answer. When questioning continued, counsel proceeded as follows:

Q. During your supervision of the defendant (appellant) approximately how long or how often did you see him?

(N.T.T., 1/18/83, p. 496). The court once again interrupted counsel and instructed the jury to disregard the question and the answer.[6] Defense counsel then ceased his questioning and dismissed the witness.

Following his conviction, appellant filed post-verdict motions alleging, inter alia, that this line of questioning had constituted ineffective assistance of counsel since it placed evidence of prior criminal activity before the jury, i.e., that he was on probation as the result of a conviction of another crime. An evidentiary hearing was held before the trial court *en banc.* Appellant presented no evidence at the hearing. The Commonwealth, in turn, presented the testimony of appellant's trial counsel, who testified as follows:

Q. Why did you call Mr. Gay, the probation officer of the Defendant Robert Douglas?

A. At the time—I'm trying to recall all of the circumstances—I felt that on the basis of the testimony that was

---

6. Despite the court's instruction, it appears from the record that the witness had not answered the question.

presented by the prosecution throughout the trial, it was to a degree insurmountable. On the basis of it I had subpoenaed approximately six or seven witnesses to testify on the defendant's behalf at the time he was to present the defense. Of the six or seven witnesses, two actually accepted the subpoenas that I had served, the other ones either refused or there was no address that I was provided with. So as a result, I had no witnesses on behalf of the defendant on the day I was to present my defense. The only person available was Mr. Norman Gay, the probation officer. At the time what I intended to show was—the incident occurred in August, as I recall.

Q. That would be August of '82?

A. '82.

Q. '81?

A. '81.

Judge Halbert: 81

Mr. Quinn: '81. Subsequent to the incident occurring in August, the defendant (appellant) had reported on a regular basis to Mr. Gay in September and most of October of—

Judge Kubacki: If I may interrupt. You're not answering the question. During this trial you asked, "Do you know the defendant Robert Douglas?" He said, "Yes, I do. How do you know him? I was Robert Douglas' probation officer from approximately 6-28-77 until the present." You asked, "Do yo [sic] remembered [sic] or does your record reflect the charges that placed the defendant on probation?" He answered, "you are speaking about his initial probation?" the court in dismay interrupts at that point. Why?

Mr. Quinn: I was attempting to show that someone who would be on probation and committed the alleged crime that he was charged with in August would not have continued to report to his probation officer on a regular basis after that period of time. I felt that by introducing testimony of that nature I could mitigate that prior

testimony that was presented by the prosecution throughout the trial.

Judge Kubacki: Continue.

By Mr. Williams:

Q. Now, you do recall that the Commonwealth had put on numerous police officers who testified to flight on behalf of the defendant Robert Douglas?

A. Yes.

Q. Chasing him through North Philadelphia, jumping fences, that sort of stuff?

A. Yes.

Q. Was that evidence you sought to rebut with this reporting to his probation officer?

A. That was part of it. Also the mens rea of intent to commit the homicide. Because if a person would have done that, why would he continue to report to his probation officer?

Q. Flight is an indicia of guilt; is that correct?

A. Correct.

Q. In other words as you recall, Mr. Norman Gay was not permitted to testify that the defendant had been reporting, is that right, that he had continued to see him, he did not testify to that?

A. No, he did not.

Q. And do you also recall that the jury who heard this case never knew what the defendant was on probation for?

A. As far as I recall they did not or they did not.

Q. They didn't hear it in this courtroom, it's not on this record; is that right?

A. That's right.

(N.T.T., June 1, 1987, pp. 14–16).

The *en banc* panel of the Court of Common Pleas found that, because at the time of appellant's trial counsel did not state the above quoted theory as his purpose for introducing the testimony of Mr. Gay, it could not be considered by the

court in post-trial motions [7]. As a result it held that trial counsel was ineffective and that appellant was prejudiced by that ineffectiveness. Thus, it granted appellant's request for a new trial. As previously noted, the Superior Court reversed on the ground that the trial court erred in failing to consider the reasons given by trial counsel at the post-trial proceedings for introducing the testimony of Mr. Gay. The Superior Court then concluded that since trial counsel's testimony at the hearing provided a reasonable basis for his actions, appellant's trial counsel could not be deemed ineffective. Appellant now alleges that the Superior Court erred in making such a determination.

██ The three prong test under which a claim of ineffective assistance is to be judged is well established and has previous-

7. At trial, the trial judge called a sidebar conference regarding the testimony of Mr. Gay, the probation officer. At this conference, the trial counsel stated that the purpose of this testimony was to demonstrate that the defendant was "amenable to probation and that the death penalty [was] not warranted in this case." N.T.T., at 492. The trial court found that this testimony was not relevant at that time, but could be admissible at the penalty phase if the jury returned with a verdict of murder in the first degree. N.T.T., at 493.

At the hearing on Post-Trial Motions, the Commonwealth advanced the theory that the defense wished to introduce this evidence to show that the defendant had not fled from authorities so as to negate the portion of the Commonwealth's case dealing with flight as evidence of guilt. The en banc panel found that since this reason was not brought to the trial court's attention at the side bar conference, it could not be used to justify the trial counsel's actions.

On this point, we are in accord with the reasoning of the Superior Court which rejected the contention that the court could not consider the rationale for the questioning offered at the post-trial hearing because it was not stated at trial. The very purpose of an evidentiary hearing is to allow the parties to present evidence that has a bearing on the issues raised but that has not been fully developed in the record. See Commonwealth v. Petras, 368 Pa.Super, 372, 534 A.2d 483 (1987) (where a claim of ineffectiveness of counsel has been made, and there has been no evidentiary hearing in the court below to permit the defendant to develop evidence on the record, a court should remand for such a hearing); Commonwealth v. Spotts, 341 Pa.Super. 31, 491 A.2d 132 (1985) (remand for ineffectiveness hearing to allow trial counsel to establish reasonable basis for failure is better course than finding counsel ineffective on the record). We believe that the reasoning employed by the en banc panel would eviscerate the very concept of ineffectiveness hearings and, therefore, we expressly reject it.

ly been set forth by this court in *Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989). First, a defendant must show his claim to be of arguable merit. In the event this threshold requirement is satisfied, the defendant must next establish that defense counsel had no reasonable basis for undertaking or failing to undertake the act or omission in question. Finally, the defendant must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. In other words, that the defendant was prejudiced by the act or omission. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *See also Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In applying this test to the present facts, we hold that while appellant's claim is of arguable merit[8], it is not sufficient to establish a claim of ineffective assistance of counsel since appellant's counsel articulated a reasonable basis for his actions, and appellant was in no way prejudiced by these actions. Thus, we affirm the holding of the Superior Court.

Our standard for determining whether counsel had a reasonable basis for his or her actions is well established. As we stated in *Commonwealth v. Pierce:*

"Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his clients interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that counsel's decisions had any reasonable basis."

*Pierce,* 515 Pa. at 158, 527 A.2d at 975 (quoting *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 604, 235 A.2d 349, 352–353 (1967)).

8. It is well settled that as a general rule criminal activity unrelated to the charge is inadmissible against the defendant. *Commonwealth v. Billa,* 521 Pa. 168, 555 A.2d 835 (1989).

Initially, we note that the Superior Court was correct in reversing the lower court for failing to consider the explanations offered at the hearing on post-trial motions. *Pierce* clearly states that counsel is to be deemed effective if *any* reasonable basis exists for counsel's actions regardless of whether such a theory was proffered at the time of side-bar questioning or at the time of the post-trial motion. We find such a basis exists in the instant case.

At the hearing on post-trial motions, appellant's trial counsel stated that all of the witnesses whom he wished to call on appellant's behalf had either failed to appear at trial, failed to accept their subpoenas, or could not be located. Thus, appellant's counsel testified that he placed appellant's probation officer on the stand in hopes of rebutting the Commonwealth's case in chief by showing that following the shooting appellant had engaged in a course of conduct (regularly reporting to his probation officer) inconsistent with the actions one would normally take after committing a murder. The fact that the trial judge refused to admit such evidence does not create a claim of ineffective assistance since the attempt to introduce the evidence was a reasonable strategic choice between doing nothing to rebut the Commonwealth's case,[9] and attempting to rebut the Commonwealth's evidence with only the evidence available. Indeed, had appellant's counsel decided not to place the probation officer on the stand, appellant, in all likelihood,

9. The trial court held that this strategy would have offered a far greater chance success than the one chosen by defense counsel due to the fact that the Commonwealth's case-in-chief did not include any live eyewitness testimony identifying appellant as the perpetrator of the crimes in question. We disagree. As previously noted, the Commonwealth's evidence included the preliminary hearing testimony of victim/witness Michael McLaurin in which McLaurin identified appellant as the murderer of Donald Knight. This identification would appear to have been particularly reliable in light of the fact that McLaurin had known appellant personally prior to the shooting. The Commonwealth also introduced the testimony of the victim's mother regarding the incident which occurred four days after Donald Knight's funeral, and evidence of the three incidents in which appellant had fled from the police while threatening them with either a sawed-off shotgun or a handgun. Had defense counsel left this evidence unanswered, appellant would almost surely have been convicted. Thus, appellant's counsel would appear to have had little choice but to attempt to rebut the prosecution's case.

would now be claiming that his counsel was ineffective for failing to attempt to use what evidence was available.

As previously noted, counsel introduced the testimony of appellant's probation officer in an attempt to rebut the Commonwealth's evidence by showing appellant's conduct was not consistent with the crimes charged. Since a reasonable basis existed for counsel's action, we are required under *Pierce* and *Maroney* to end our inquiry and counsel is to be deemed effective. Thus, appellant's claim clearly fails.

Further, even if defense counsel had no reasonable basis for undertaking the act in question, appellant has failed to demonstrate the requisite prejudice needed to obtain relief on a claim of ineffective assistance of counsel. Under the present facts, appellant's probation officer never stated the specific crimes for which appellant had previously been convicted. Hence, the probation officer's testimony was at best a mere passing reference to appellant's prior criminal activity. We find it doubtful that but for such a passing reference the outcome of the present case would have been different. *See Commonwealth v. Nichols*, 485 Pa. 1, 4, 400 A.2d 1281, 1282 (1979) (mere passing references to prior criminal activity will not necessarily require reversal unless the record illustrates definitively that prejudice resulted from the reference).

The Order of the Superior Court is affirmed and the case is remanded to the Court of Common Pleas for consideration of the remainder of the appellant's posttrial motions.

NIX, C.J., files a dissenting opinion in which ZAPPALA, J., joins.

MONTEMURO, J., is sitting by designation as Senior Justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of LARSEN, J., see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.

NIX, Chief Justice, dissenting.

While I agree with the majority's conclusion that Appellant's claim has arguable merit and that counsel is deemed

effective if *any* reasonable basis exists, I disagree with its conclusion that counsel had a reasonable basis for his actions and that Appellant was not prejudiced. Therefore, I dissent.

First, I find no reasonable basis for defense counsel questioning the probation officer during the adjudicatory portion of the trial. The explanation offered at sidebar was a mistake on the part of defense counsel in that he was offering the testimony to mitigate against the death penalty. Clearly, this type of testimony is only appropriate at the penalty phase and should not have been pursued during the adjudication stage.

Additionally, I disagree with the majority's finding regarding the reasonableness of counsel's actions. Counsel testified that he placed Appellant's probation officer on the stand in hopes of rebutting the Commonwealth's case in chief by showing that following the shooting Appellant had engaged in a course of conduct inconsistent with. the actions one would normally take after committing a murder. The majority finds that "[t]he fact that the trial judge refused to admit such evidence does not create a claim of ineffective assistance since the attempt to introduce the evidence was a reasonable strategic choice between doing nothing to rebut the Commonwealth's case, and attempting to rebut the Commonwealth's evidence with the only evidence available." Op. at 598 (footnote omitted). I disagree with the finding that this strategic choice was reasonable.

During post-trial motions, counsel explained that the probation officer's testimony that Appellant reported regularly would contradict the Commonwealth's testimony that Appellant had evaded the police for over a year and, therefore, would remove the indicia of guilt suggested by Appellant's continued flight. However, Commonwealth witnesses testified about several acts of flight that took place after the time period for which the probation officer had knowledge. Thus, the inference of guilt from these acts of flight would have remained regardless of the probation officer's testimony. As a result, counsel's "strategic choice" had no reasonable basis.

Counsel's assertion that the testimony of the probation officer could put a question in the jurors' minds as to the *mens rea* of Appellant has no reasonable basis either. Defense counsel stated that the jury might have believed that Appellant would not continue to report to the probation officer, even until October, if he had just committed this vicious attack. However, any possible benefit Appellant might have received from this theory was minimal in contrast to the harm he suffered when the jury became aware of his prior criminal conduct. This action was clearly unreasonable. "The presumed effect of [evidence of prior criminal conduct] is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence." *Commonwealth v. Groce,* 452 Pa. 15, 19, 303 A.2d 917, 919, *cert. denied,* 414 U.S. 975, 94 S.Ct. 290, 38 L.Ed.2d 219 (1973) (quoting *Commonwealth v. Trowery,* 211 Pa.Super. 171, 173–74, 235 A.2d 171, 172 (1967)). Therefore, this explanation is unreasonable also.

Finally, defense counsel's statement during the post-trial hearing that the probation officer was the only witness available at the time the defense was to be presented is certainly not a reasonable basis for counsel's actions. Rather, as the trial court correctly stated, "in view of the evidence presented at trial, especially the fact that there was no live eyewitness testimony at the trial identifying the defendant as the perpetrator of these crimes, introduction of any information involving a prior criminal record was devastating." *Commonwealth v. Douglas,* Nos. 2326–28, 2334–36 August Term 1981, slip op. at 6 (C.P. Philadelphia County November 16, 1988).

Therefore, in considering all of the possible explanations proffered by defense counsel, including those offered in hindsight, I am constrained to conclude that no reasonable explanation exists to support counsel's actions in pursuing the line of questioning which would elicit Appellant's prior criminal activities. Moreover, I can find no other reasonable basis for counsel's actions.

After determining that trial counsel's actions were not reasonably designed to protect Appellant's interests, a determina-

tion as to whether counsel's actions prejudiced Appellant must be made. *Commonwealth v. Eisenhart,* 531 Pa. 103, 611 A.2d 681 (1992). In *Eisenhart,* this Court set forth the test for examining the effect of improperly admitted evidence, such as testimony by a probation officer, as follows:

> [E]vidence improperly admitted can be treated as harmless on any of the three grounds, namely, [1] that the evidence of guilt, without regard to the tainted evidence, is so overwhelming that conviction would have followed beyond a reasonable doubt without regard to it, [2] that the tainted evidence was merely cumulative of other proper persuasive evidence on the issue for which it is offered, or [3] that it was so slight or tangential in its effect that its influence on the jury can be determined to be *de minimus.*

*Id.* at 111, 611 A.2d at 685 (citing, *Commonwealth v. Norris,* 498 Pa. 308, 317, 446 A.2d 246, 250 (1982)).

When analyzed under the *Eisenhart* standard, the facts of this case establish the prejudicial nature of the evidence presented by putting the probation officer on the stand. Here, there was no live eyewitness testimony at the time of trial and very little circumstantial evidence to support the Commonwealth's charges against Appellant. Therefore, it cannot be concluded that the jury would have convicted Appellant without regard to his prior criminal record. Further, there was no additional proper evidence as to Appellant's prior criminal record, and thus, the evidence is not merely cumulative. Finally, the inference of guilt which attaches to the admission of prior criminal activity cannot be considered *de minimus* in a case with such a dearth of other evidence against Appellant.

Accordingly, I would reverse the Order of the Superior Court and remand the matter to the Court of Common Pleas for a new trial.

ZAPPALA, J., joins in this dissenting opinion.