J-S68029-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| FREDDIE CLEVELAND, | |
| Appellant | No. 210 EDA 2014 |

Appeal from the PCRA Order entered December 19, 2013,
in the Court of Common Pleas of Delaware County,
Criminal Division, at No(s): CP-23-CR0000001-2009.

BEFORE:  ALLEN, JENKINS, and MUSMANNO, JJ.

MEMORANDUM BY ALLEN, J.                    **FILED NOVEMBER 10, 2014**

Freddie Cleveland ("Appellant") appeals from the order denying his petition for relief under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. sections 9541-46.  We affirm.

We previously summarized the pertinent facts as follows:

> [Appellant] dated [the victim] while [she] was in high school, and after her graduation they lived together at the Drexel Brook Apartments for 2-3 months.  On December 29, 2008, [the victim] broke off their relationship and moved back to her parents' house on Drexel Hill.
>
> One day [later], on December 30, 2008, [Appellant] returned his keys to the lease administrator at the Drexel Hill Apartments.  When the administrator opined that [Appellant] and [the victim] were too young to live together, [Appellant] "became a little bit animated.  . . . [H]e said, you never know, and he might get back with her."
>
> Later that afternoon, [the victim] arrived at her parents' house while conversing with Daniel Bronner on her

cellphone. She informed Bronner that [Appellant] was outside the house. Bronner heard [Appellant] beg [the victim] for a hug and ask "why they couldn't be together, if he was good enough for her." Concerned for her safety, [the victim] entered her parents' house and instructed her younger sister, [A.J.], to close the blinds and not to go outside. [The victim] said that she saw [Appellant] outside.

[The victim] and [A.J.] were the only persons in the house. Moments after [the victim] arrived, [A.J.] heard glass break on the front door. [The victim] tried to keep the door closed, shouting: "Go away, Fred." Over the phone, Bronner heard glass breaking and [the victim] screaming, "Fred, no, don't do this." A genetic analyst for the Commonwealth identified a blood stain at the front door as matching [Appellant's] DNA profile.

[The victim] told [A.J.] to hide and call their father[.] [A.J.] ran to her bedroom closet, called [their father] on her cellphone and reported that "something was wrong, and . . . [Appellant] was in the house, and . . . going to hurt [the victim]." [A.J.] heard footsteps running up the back steps and the kind of screaming she associated with scary movies. The screaming eventually stopped, and she heard footsteps going downstairs.

[The girls' father] arrived home nine minutes after [A.J.'s] phone call and saw the center glass broken on the front door. [A.J.] approached him and said that she saw somebody's foot in the kitchen. [The girls' father] ran into kitchen and saw [Appellant] there gasping for air with a dark spot on his shirt and a cut on his throat. Officer [Kevin] Cosentino of the Upper Darby Police, who had arrived at the residence shortly after [the girls' father], saw [Appellant] lying in the kitchen and identified the spot on [Appellant's] clothes as blood. A genetic analyst for the Commonwealth found that the blood stain on Appellant's shirt matched [the victim's] DNA profile.

[The girls' father] ran upstairs in search of [the victim] and found her lying in a pool of blood in the bathroom. She had been stabbed with a butcher's knife from the kitchen. The Commonwealth's medical examiner

> determined that she died from 26-28 stab wounds and 5-10 slash wounds on her head, chest, hands and back. . . .
>
> [Appellant] was non-responsive and had a life-threatening injury to his chest. He underwent successful emergency surgery at the University of Pennsylvania Hospital.

*Commonwealth v. Cleveland*, 30 A.3d 545 (Pa. 2011), unpublished memorandum at 1-3 (citations omitted).

The Commonwealth charged Appellant with first-degree murder. On March 26, 2010, following a four-day trial, a jury convicted Appellant as charged. On May 3, 2010, the trial court sentenced Appellant to life in prison without parole. Appellant filed a timely appeal to this Court. On May 13, 2011, we affirmed Appellant's judgment of sentence. *Cleveland*, *supra*. Subsequently, we denied Appellant's petition for reargument. On July 31, 2012, our Supreme Court denied Appellant's petition for allowance of appeal. *Commonwealth v. Cleveland*, 49 A.3d 442 (Pa. 2012).

On January 22, 2013, Appellant filed a timely, counseled PCRA petition, in which he contended that, given the overwhelming evidence that he killed the victim, trial counsel was ineffective for failing to pursue a defense relating to Appellant's mental health issues, establishing that the crime rose to no more than voluntary manslaughter. To this end, Appellant quoted from the findings of a forensic psychologist, who opined that because Appellant suffered from a borderline personality disorder, a defense based on mental issues would have been meritorious. On March 12, 2013, the Commonwealth filed its response. On June 25, 2013, the PCRA court

convened an evidentiary hearing, at which Appellant, the forensic psychologist identified in Appellant's PCRA petition, trial counsel, and Appellant's father testified. After hearing this testimony, and considering arguments and briefs presented by counsel for the parties, the PCRA court, by order entered December 19, 2013, denied Appellant's PCRA petition. This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue:

> Was [Appellant] denied effective assistance of counsel for the failure to present a viable defense at trial, to wit, that the homicide in this case rose no higher than voluntary manslaughter?

Appellant's Brief at 3.

This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Halley**, 870 A.2d 795, 799 n.2 (Pa. 2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa. Super. 2001). To be entitled to relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated in section 9543(a)(2) of the PCRA. One such error involves the ineffectiveness of counsel.

- 4 -

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Johnson*, 966 A.2d at 532. This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

In assessing a claim of ineffectiveness, when it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 661 A.2d 352, 357 (Pa. 1995). Counsel will not be deemed ineffective if any reasonable basis exists for counsel's actions. *Commonwealth v. Douglas*, 645 A.2d 226, 231 (Pa. 1994). Even if counsel had no reasonable basis for the course of conduct pursued, an appellant is not entitled to relief if he fails to demonstrate the

requisite prejudice which is necessary under Pennsylvania's ineffectiveness standard. *Douglas*, 645 A.2d at 232. Counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*), *appeal denied*, 852 A.2d 311 (Pa. 2004).

Moreover, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonable and was not the result of sloth or ignorance of available alternatives. *Commonwealth v. Collins*, 545 A.2d 882, 886 (Pa. 1988) (cited with approval by *Commonwealth v. Hall*, 701 A.2d 190, 204 (Pa. 1997)). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. 2000) (quoting *Commonwealth v. Miller*, 431 A.2d 233, 234 (Pa. 1981). Our Supreme Court has defined "reasonableness" as follows:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable* basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987) (quoting *Com. ex rel. Washington v. Maroney*, 235 A.2d 349, 352-53 (Pa. 1967)). *See*

*also Commonwealth v. Clark*, 626 A.2d 154, 157 (Pa. 1993) (explaining that a defendant asserting ineffectiveness based upon trial strategy must demonstrate that the "alternatives not chosen offered a potential for success substantially greater than the tactics utilized"). A defendant is not entitled to appellate relief simply because a chosen strategy is unsuccessful. *Commonwealth v. Buksa*, 655 A.2d 576, 582 (Pa. Super. 1995).

In support of his claim of ineffectiveness, Appellant asserts "the defense utilized at trial—that Appellant was not the perpetrator—was completely unreasonable in view of [the] overwhelming evidence that he was, and [trial] counsel failed to consider presenting a defense based on expert evidence that this killing rose no higher than voluntary manslaughter[.]" Appellant's Brief at 13. According to Appellant, "the victim had engaged in a series of provocative behaviors toward [him] that resulted in a total loss of control. *Id.* Appellant then references the forensic psychologist's findings that he is "a person with a history of emotional fragility, intolerance of abandonment and impulsive conduct." *Id.* Appellant contends further, "[d]ue to this passion, [his] mind was not then capable of cool reflection." *Id.* Appellant therefore claims he is entitled to a new trial where he could present this defense.

In rejecting Appellant's claim, the PCRA court explained:

> The Court concludes that trial counsel's strategy was reasonable. During the evidentiary hearing in this case, [PCRA] counsel presented the expert testimony of Dr. Elliott Atkins, a psychologist, and cross-examined trial

counsel. [Appellant] testified as well. Trial counsel's testimony was credible; [Appellant] was evasive and equivocal. The Commonwealth's post-hearing brief summarizes the critical facts, all of which the Court finds credible and supported by the record:

> [Trial counsel] discussed with [Appellant] the Commonwealth's case against him. [Although trial counsel explained] to [Appellant] the significant and powerful evidence that clearly established that [he] stabbed the victim to death, [Appellant] never admitted to killing [the victim]. Instead, [Appellant] maintained that he did not recall what happened. . . Although [trial counsel] considered the possibility of a voluntary manslaughter defense, that pursuit was made impossible because [Appellant] insisted that he did not recall what happened. Also problematic with a possible voluntary manslaughter defense was the passage of time [between the date] that [the victim] broke up with [Appellant] and the actual killing.

> Commonwealth's Post-Hearing Memorandum, p. 11 [] (citations to record omitted). Based on this evidence, the Court concludes that [Appellant] failed to prove that [trial counsel] provided ineffective assistance. To the contrary, the Court concludes that [trial counsel] was quite competent, but that the evidence of [Appellant's] guilt was overwhelming.

PCRA Court Opinion, 7/2/14, at 4. Our review of the record and pertinent case law supports the PCRA court's conclusions.

Significantly, the PCRA court credited the testimony of counsel over the testimony and other allegations made by Appellant at the evidentiary hearing. We cannot disturb this determination. *See Commonwealth v. Battle*, 883 A.2d 641, 648 (Pa. Super. 2005) (explaining that credibility determinations are solely within the province of the PCRA court).

Our Supreme Court has summarized:

A person is guilty of "heat of passion" voluntary manslaughter if at the time of the killing he or she reacted under a sudden and intense passion resulting from serious provocation by the victim. "Heat of passion" includes emotions such as anger, rage, sudden resentment or terror which renders the mind incapable of reason. An objective standard is applied to determine whether the provocation was sufficient to support the defense of "heat of passion" voluntary manslaughter. The ultimate test for adequate provocation is whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection.

*Commonwealth v. Miller*, 987 A.2d 638, 649-650 (Pa. 2009) (citations omitted).

Our Supreme Court addressed a similar claim in *Commonwealth v. Mason*, 741 A.2d 708 (Pa. 1999), *abrogated by another capital appeal in Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003). In *Mason*, the defendant, after being excluded from a social outing by the victim the night before, forced his way into the victim's home and stabbed her eighteen times. A jury convicted defendant of first-degree murder and the trial court sentenced him to death. Among the issues the defendant raised on direct appeal was the claim that "the jury erred in failing to find that he was acting under the 'heat of passion' when he fatally stabbed" the victim. *Mason*, 741 A.2d at 713. In rejecting Appellant's challenge, our Supreme Court explained:

Here, [the defendant] does not claim that his quarrel in the bar with [the victim], which occurred more than seven and one-half hours before the stabbing, caused him to kill [her] in the heat of passion. Rather, Appellant claims that he was so intoxicated at the time of the stabbing that ***he***

> ***can't remember whether words were exchanged which would give rise to a heat of passion defense.*** However, there was no evidence to support a finding that [the victim] did anything immediately before the stabbing to provoke [the defendant] so as to cause him to act in the heat of passion. In fact, [the victim's] son testified that his mother was just lying on the bed when Appellant came into the room and began stabbing her. Thus, the record in the instant case simply does not support Appellant's speculative claim that he was acting under the heat of passion when he stabbed [the victim] to death.

***Id.*** at 714 (citations omitted) (emphasis added).

Here, Appellant consistently informed trial counsel that he could not recall stabbing the victim. Thus, as in ***Mason***, there is no indication that "words were exchanged which would give rise to a heat of passion defense." Also, as in ***Mason***, there is no testimony (from either the victim's sister or the man who was on the phone with the victim at the time of the murder) as to provoking statements made by the victim. Instead, Appellant references his self-serving testimony that the victim was "saying different nasty things" to him, and this fact caused him to stab her. N.T., 6/25/13, at 79. Finally, at the evidentiary hearing, trial counsel testified that "my hands were kind of tied as it goes to [a voluntary manslaughter] defense because [Appellant] indicated that he did not recall the events." ***Id.*** at 45.

Because Appellant maintained that he did not recall the stabbing, the PCRA court's conclusion that trial counsel's decision to forgo a "heat of passion" defense was reasonable is supported by the record. ***See also Miller***, 987 A.2d at 649-50 (rejecting the PCRA petitioner's claim that trial counsel was ineffective for failing to call an expert to testify as to his

"personality makeup" and pursue a "heat of passion" defense; "[o]nce [the defendant] refused to testify about the events surrounding the killing, he made it virtually impossible to convince the [fact finder] that the killing was committed in the 'heat of passion'"). We thus affirm the PCRA court's order denying Appellant post-conviction relief.

Order affirmed.

Judge Jenkins did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2014