J-S45020-15

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TYRICK DONTE' WALKER | |
| Appellant | No. 148 MDA 2015 |

Appeal from the PCRA Order of January 12, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0002608-2011

BEFORE: BOWES, J., WECHT, J., and FITZGERALD, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED SEPTEMBER 22, 2015**

Appellant Tyrick Donte' Walker appeals the January 12, 2015 order denying his petition for relief under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541, *et seq.* Based upon the sound reasoning of the PCRA court, and for the reasons set forth below, we affirm.

In our prior memorandum affirming Appellant's judgment of sentence, we found the trial evidence sufficient to establish the following account of the events underlying Appellant's charge and conviction of first-degree murder[1]:

> Reshanna Sexton testified that in the winter of 2011, she was the girlfriend of the victim in this case, Mark McLaughlin. N.T.

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S. 2502(a).

Trial, 11/5-9/2012, at 359. She testified that she knew Appellant and another man, Mike Weaver, because they were friends with the victim. *Id.* Ms. Sexton explained that in April of 2011, she and all three men were homeless, and moved together into "a campsite down near the river" that was composed of several tents. *Id.* at 361. On April 4, 2011, Ms. Sexton worked until approximately 3:30 p.m. and then returned to the campsite, where she observed the victim and Mr. Weaver "drinking a couple of beers." *Id.* at 362. Shortly thereafter, Mr. Weaver and the victim began arguing, and Mr. Weaver went inside his tent "and refused to respond to [the victim] anymore." *Id.* at 364-66. Meanwhile, Appellant, who had been present during the victim's argument with Mr. Weaver, also retreated into this tent. *Id.* at 367.

Ms. Sexton testified that Appellant later emerged from his tent with a suitcase and "sort of tossed his tent to the side." *Id.* Appellant then went to Mr. Weaver's tent, told him to "watch [his] stuff," and began to leave the campsite. *Id.* at 368. However, Appellant "came running back" to the campsite "and lunged at [the victim]." *Id.* at 369. Ms. Sexton stated that Appellant "grabbed [the victim] by the throat and . . . the force knocked [the victim] backwards into a rock." *Id.* at 370-71. As Appellant was attacking the victim, Appellant said, "I'm sick of hearing your mouth." *Id.* at 371. Ms. Sexton claimed that the fight moved onto a tarp where Appellant's tent had been, at which point Appellant "climbed on top of [the victim]" with "[h]is knees . . . pinning [the victim's] arms." *Id.* Appellant began hitting the victim in his head and face with both of his fists as Ms. Sexton was "screaming for it to stop." *Id.* at 372.

Ms. Sexton testified that after the victim sustained about seven or eight punches to his head by Appellant, the victim became motionless. *Id.* at 372-73. Appellant climbed off the victim, and the victim rolled onto his right side and away from Appellant. *Id.* at 373. Appellant then "laid down behind [the victim] and wrapped his arm around his throat." *Id.* Ms. Sexton stated that the victim, who had been struggling "weakly," became motionless again. *Id.* at 374. Ms. Sexton continued to scream for Appellant to stop, to which Appellant replied, "he wants me to kill him." *Id.* Ms. Sexton testified that after the victim became still in Appellant's "choke hold," Appellant "grab[bed] [the victim] by his shirt collar and drag[ged] him over to the water." *Id.* Ms. Sexton followed Appellant and the victim down to the water and explained what she saw as follows:

[Ms. Sexton]: There was a lot of blood in the water. [The victim] was on his stomach in the water with his head towards—towards dry ground. [Appellant] had his right foot on [the victim's] back. [The victim's] head wasn't under water. He was struggling to keep it up.

*Id.* at 376. Ms. Sexton testified that the victim eventually stopped moving, and Appellant moved away from the victim and made a phone call. *Id.* at 378. Eventually, an "acquaintance" of the group, Jim Wollard, arrived at the campsite, and he and Appellant pulled the victim out of the water. *Id.*

Mr. Wollard began CPR on the victim while Appellant dialed 911. *Id.* at 379. Eventually, a police officer arrived at the scene to find Mr. Wollard attempting to revive the victim. *Id.* at 270. The officer testified at trial that he assisted Mr. Wollard with CPR until the paramedics arrived and pronounced the victim dead. *Id.* at 271. The officer testified that he observed that the victim had "large cuts, gashes on his face and across his nose," and that he also had "gravel, [and] mud in his mouth." *Id.* at 270-71.

When Appellant took the stand, he testified similarly to Ms. Sexton regarding the argument between Mr. Weaver and the victim. Appellant claimed that when he retreated into his tent, he heard the victim say that he would "tear down [Appellant's] tent," and that "nobody down here [was] gonna [*sic*] do nothing about it." *Id.* at 448. Appellant testified that because he felt threatened by these comments, he decided to leave the campsite. *Id.* at 449. However, as Appellant was leaving, the victim made more threatening remarks. *Id.* at 452. Appellant testified that he began to think to himself, "you know, why do I have to be threatened, why do I have to be made to feel this way[?] Why do I have to be the one who's leaving[?]" *Id.* Accordingly, Appellant went back to the campsite "with the intentions of confronting" the victim. *Id.*

When he arrived at the campsite, Appellant admitted that he grabbed the victim and "was shaking him" while saying "why do you got to be like this." *Id.* at 453. Appellant testified that both men fell to the ground, with Appellant landing on top of the victim. *Id.* Appellant claimed that the victim began yelling at him, saying, "do it, because I ain't [*sic*] got nothing to live for, you might as well do it." *Id.* at 453-54. Appellant also testified that:

[Appellant]: [The victim] yells in my face, he says, ["]you better hit me, you better smash me, you better float me up the river.["] And this is as close to the wording as I remember. And he says[, "]because if you let me up[. . ."]—and in all honesty, that's the last thing I remember him saying.

*Id.* at 454.

Appellant stated that he feared that if he let the victim get up, the victim would kill him. *Id.* at 455. Appellant testified that he began to hit the victim "three or four times" and then "put him in a headlock" in an attempt to render the victim unconscious so he could not harm Appellant. *Id.* at 456-57. Appellant claimed that when the victim stopped moving, he let him go, but "within a second," the victim moved to get up. *Id.* at 457. Appellant then grabbed the victim and pulled him toward the river, at which point both he and the victim fell into the water. *Id.* He testified that the victim was floating on his back with his face out of the water. *Id.* at 458. At that point, Appellant realized "this wasn't really something [he] wanted to do," and tried to pull the victim out of the water but was not able to do so. *Id.* He then called Jim Wollard for help, and when Jim arrived, the two men pulled the victim out of the water. *Id.* at 462-63. Appellant claimed that after Mr. Wollard began CPR, Appellant did chest compressions on the victim and then called 911. *Id.* at 463, 465.

*Commonwealth v. Walker*, 2205 MDA 2012, slip op. at 4-8 (Pa. Super. Sept. 10, 2013) (citations modified).

Following a five-day trial, a jury found Appellant guilty of first-degree murder. *Id.* at 2. Accordingly, on November 15, 2012, the trial court sentenced Appellant to a mandatory term of life imprisonment. Appellant timely appealed, and, on June 14, 2013, his attorney filed a brief and a petition to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), opining that Appellant had no non-frivolous issues to present on appeal.

After reviewing the technical sufficiency of counsel's *Anders*/*Santiago* brief and conducting an independent review of the record, we agreed. Accordingly, on September 10, 2013, we granted counsel's petition to withdraw and affirmed Appellant's judgment of sentence.

Appellant timely filed the PCRA petition *sub judice* on April 17, 2014. The PCRA court appointed new counsel to represent Appellant during the PCRA proceedings. In his petition, Appellant contended that trial counsel was ineffective for failing to call Wollard as a witness in support of Appellant's theory of self-defense. The PCRA court held a hearing on September 10, 2014. At the hearing, Appellant presented three witnesses— Wollard, trial counsel, and Appellant. *See* PCRA Court Opinion, 1/12/2015, at 1-2. The PCRA court provides a detailed and uncontested account of these three witnesses' testimony at the PCRA hearing, and we adopt its account as our own.[2] *See Id.* at 2-4.

The essence of Appellant's argument, before the PCRA court and before this Court, is that Wollard could have corroborated Appellant's contention that he acted in self-defense by testifying to the victim's violent propensities and the presence of deadly weapons at the camp site. After reviewing the standards governing a PCRA petitioner's claim that counsel was constitutionally ineffective, the PCRA court determined that no relief was

---

[2]  A copy of the PCRA court's opinion is attached hereto for ease of reference.

due. Specifically, the PCRA court noted that several other witnesses established the victim's violent tendencies, and that Wollard's account of the relevant events differed from Appellant's in certain particulars that would have contradicted and undermined the credibility of Appellant's own testimony. Consequently, on January 12, 2015, the PCRA court denied Appellant's petition, and this timely appeal followed.

On January 22, 2015, the PCRA court entered an order pursuant to Pa.R.A.P. 1925(b) directing Appellant to file a concise statement of the errors complained of on appeal. On February 2, 2015, Appellant timely filed his Rule 1925(b) statement raising two issues, only one of which is pursued before this Court. To wit, before this Court, Appellant raises the following issue:

> Whether the [PCRA court] erred in denying post-conviction relief where trial counsel was ineffective in failing to call James Wollard as a witness[] to testify regarding the violent propensities of the victim, the rescue efforts and remorse of[ ]Appellant, and the presence of weapons at the crime scene, in a case asserting a defense of self-defense?

Brief for Appellant at 4.

We review a denial of a post-conviction petition to determine whether the record supports the PCRA court's findings and whether its order is otherwise free of legal error. *Commonwealth v. Faulk*, 21 A.3d 1196, 1199 (Pa. Super. 2011). To be eligible for relief under the PCRA, Appellant must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2), including

constitutionally ineffective assistance of counsel, *see* 42 Pa.C.S. § 9543(a)(2)(ii).

In his sole argument on appeal, Appellant asserts that trial counsel was ineffective for failing to present Wollard's testimony at trial, upon the basis that Wollard would have corroborated Appellant's testimony regarding the victim's violent propensities, which, in turn, would have buttressed Appellant's claims that he believed his actions were reasonable under the circumstances. The test for ineffective assistance of counsel is substantively the same under the Federal and Pennsylvania Constitutions. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Commonwealth v. Jones*, 815 A.2d 598, 611 (Pa. 2002). Under Pennsylvania's approach, Appellant must demonstrate that (1) his underlying claim has arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Steele*, 961 A.2d 786, 796-97 (Pa. 2008). A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. *Jones*, 815 A.2d at 611.

In addition to the above factors, in order to show that trial counsel was ineffective for failing to present Wollard's testimony, Appellant must also establish the following criteria:

> [T]he existence of and the availability of the witness[;] counsel's actual awareness, or duty to know, of the witness[;] the willingness and ability of the witness[] to cooperate and appear on the defendant's behalf[;] and the necessity for the proposed testimony in order to avoid prejudice. Moreover, Appellant must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case.

*Commonwealth v. Gibson*, 951 A.2d 1110, 1133-34 (Pa. 2008) (internal citations and quotation marks omitted). To demonstrate prejudice sufficient to warrant relief, Appellant must establish that "the absence of the testimony of the witness was so prejudicial as to have denied [him] a fair trial." *Commonwealth v. Sneed*, 45 A.3d 1096, 1109 (Pa. 2012).

Although Wollard appears to have been a willing and available trial witness, who was prepared to testify in some regards just as Appellant contends he would have done, we are constrained to agree with the PCRA court that Appellant failed to establish trial counsel's lack of a reasonable basis for his decision to call Wollard and to establish prejudice, insofar as Wollard's testimony would have been cumulative in the areas upon which Appellant focuses his brief argument. *See* Brief for Appellant at 8-9. Furthermore, we find that the PCRA court's factual findings are supported by the record and free of legal error. Because we find that the PCRA court's account of the trial and PCRA proceedings, as well as its reasoning in support of rejecting Appellant's arguments, are sound and comprehensive, *see* P.C.O. at 5-7, we adopt its reasoning as our own. A copy of the PCRA court's opinion is attached for ease of reference.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/22/2015

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA   :
                                  :

vs.                           :        No. 2608-2011
                                    :

TYRICK DONTE WALKER          :        PCRA

## OPINION

BY: KNISELY, J.                                          January 12, 2015

Before the Court is Petitioner Tyrick Donte Walker's petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] In his petition, Defendant alleged that he was entitled to PCRA relief on the basis that trial counsel was ineffective for failing to call James Wollard to testify at trial. The Court held a hearing on the matter on September 10, 2014 and ordered briefs be filed by the parties. Those briefs having been filed, the matter is now ripe for disposition.

## BACKGROUND

On April 4, 2011, Petitioner and three other friends left the winter shelter for the homeless in Columbia, Pennsylvania and made their way to the bank of the Susquehanna River, about 500 yards north of the Route 30 bridge. Later that evening, there was a violent altercation between Petitioner and Mark McLaughlin ("victim"), which resulted in the victim's death. After the victim was beat and put into a chokehold, he was held underwater until he became motionless. After the victim became motionless, Petitioner called James Wollard, a pastor from the winter shelter, for assistance. Mr. Wollard arrived and attempted to revive the victim while Petitioner called 911. Petitioner was charged with one count of Criminal Homicide[2] as a result of this incident. On November 9, 2012, after a 4 day trial, a jury found Petitioner guilty of first degree murder. On November 15, 2012, Petitioner received a sentence of life imprisonment.

---

[1] 42 Pa.C.S.A. §§ 9541-9546.
[2] 18 Pa.C.S. §2501(a).

Petitioner filed a Notice of Appeal to the Superior Court of Pennsylvania on December 14, 2012. The Superior Court affirmed the judgment on September 10, 2013. Defendant timely filed his PCRA petition on April 17, 2014 and present counsel was appointed. Counsel filed an Amended PCRA on June 23, 2014 alleging that trial counsel was ineffective for failing to present James Wollard as a witness at trial.

An evidentiary hearing was held on September 10, 2014. At the hearing, the defense presented three witnesses, James Wollard, trial counsel Samuel Encarnacion, and Petitioner. James Wollard testified that he had provided Petitioner and his friends with some supplies for their "campsite" on the Susquehanna River. (N.T. PCRA Hearing, 9/10/14, p. 7). He testified that on April 4, 2011, he received a call from Petitioner and immediately left his house for the campsite. *Id.* at 6-7. He testified that when he arrived at the campsite, he saw Petitioner standing in knee-deep water in the river and also saw the body of the victim laying at the river's edge. *Id.* at 10. He testified that he and Petitioner removed the victim from the water and testified that the victim was "horrible looking with cuts and bruises and blood and mucus coming through his mouth and out his nose." *Id.* at 10. Mr. Wollard testified that he attempted to revive the victim while Petitioner prayed. *Id.* at 11. Mr. Wollard testified that he performed CPR and the victim began breathing sporadically. *Id.* at 12. He testified that he "lost" the victim, that another person at the campsite called 911, and that he continued performing CPR on the victim until paramedics arrived. *Id.* at 12-13. He testified that he knew the victim from the winter shelter; he testified that the victim would get angry and want to fight when he was drunk; however, when the victim was not drinking, Mr. Wollard never saw the victim get angry. *Id.* at 13-14. He testified that when the victim was in that state, he would scream and yell at people. *Id.* at 14. Mr. Wollard testified that he was contacted by both the defense trial counsel and the

2

prosecutor for the case. *Id.* He testified that he was willing to testify at the time of trial and that he never said he would lie to help Petitioner. *Id.* at 14-15.

On cross-examination, Mr. Wollard testified that he gave a statement to police the night of the incident that when he arrived at the campsite, Petitioner was standing over the victim's body and the victim's face was in the water. *Id.* at 17-18. He testified that on April 4, 2011, he told police the victim's face was bluish and he had a "not alive" look; he testified that he had to clear sand and pebbles out of the victim's mouth and after that, the blood and mucus came out. *Id.* at 19-21. He testified that he told the police on the night of the incident that the victim's face was cut so badly it seemed like someone had used an apple corer. *Id.* at 21-22. Mr. Wollard testified that he visited Petitioner several times in prison, that he also had information about Petitioner's past that he had been informed he could not mention at trial and that he was very upset and concerned that the information would not come out at trial. *Id.* at 25-27.

Trial counsel Sam Encarnacion testified that at the time of trial, the theory of defense was to be self-defense. *Id.* at 37. He also testified as to two specific reasons why he did not call Mr. Wollard as a witness. First, he testified that Mr. Wollard gave a version of events inconsistent with Petitioner's version, namely that Petitioner's version of the facts was that the victim's head was not underwater when Mr. Wollard arrived, whereas Mr. Wollard had informed the defense that the victim's head was underwater. *Id.* at 37-38. He then testified that the second, and main, reason why he did not put Mr. Wollard on the stand at trial was that Mr. Wollard provided a vivid description of how badly the victim looked when Mr. Wollard arrived, specifically the amount of sand and gravel in the victim's mouth. *Id.* at 38. He testified that based on the information he received from Mr. Wollard, it would more strongly point to a series of events in which Petitioner held the victim underwater, pressing the victim's face into the riverbed, forcing the victim to suck up the sand and gravel from the riverbed while he was trying to breathe. *Id.* at

3

38-39. Trial counsel also testified that Petitioner insisted on a theory of self-defense, which trial counsel felt would require Petitioner to testify, as only Petitioner could testify to the fear he felt from the victim. *Id.* at 41. Trial counsel testified that he would have preferred to make the argument that the killing was third-degree murder or manslaughter, and was prepared to present reports and a doctor's testimony to support that theory; the doctor was not called because Petitioner insisted on a theory of self-defense. *Id.* at 42-43.

Trial counsel testified on cross-examination that, even without Mr. Wollard's testimony, the defense was able to bring in the violent propensities of the victim through other witnesses. *Id.* at 46. Trial counsel also testified that it was Petitioner's decision to testify because Petitioner felt very strongly that he was justified in his actions. *Id.* 47. Trial counsel also testified on cross-examination that he spent a tremendous amount of time preparing with Mr. Wollard and felt that Mr. Wollard's testimony would not have helped the case for self-defense. *Id.* at 47-48. Additionally, he testified that Mr. Wollard spend a lot of time with Petitioner at the prison, something trial counsel had told Mr. Wollard that trial counsel was not comfortable with Mr. Wollard doing, particularly if he was going to testify and be subject to cross examination. *Id.* at 48-49.

Petitioner testified that trial counsel had told Petitioner that he should not testify at trial, but when trial started, then trial counsel told Petitioner he would have to take the stand. *Id.* at 55. Petitioner testified that it was his own choice to go with a theory of self-defense and that trial counsel had advised Petitioner to plead guilty pursuant to a plea agreement for third degree murder. *Id.* at 57. He testified that it was not his decision to testify at trial and that he only testified because his trial counsel said he would need to testify. *Id.* at 58.

4

## DISCUSSION

Defendant's claim challenges the effectiveness of his trial counsel. It is well-established that counsel is presumed effective. *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065 (1984). A PCRA petitioner bears the burden of rebutting that presumption by demonstrating that counsel's performance was deficient and that such deficiency prejudiced him. *Id.* The Pennsylvania Supreme Court divided the *Strickland* standard into three prongs, two prongs for deficient performance and one prong for prejudice. *Com. v. Koehler,* 36 A.3d 121, 132 (Pa. 2012) (citing *Com. v. Pierce,* 515 Pa. 153, 527 A.2d 973, 975 (1987)). The resulting three prongs to prove counsel ineffective are: (1) the underlying claim has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) the defendant was prejudiced by counsel's act or omission. *Id.* Counsel will not be deemed ineffective if any reasonable basis exists for his actions, and, even if counsel had no reasonable basis for his actions, a defendant is not entitled to relief if he fails to demonstrate prejudice. *Com. v. Loner,* 836 A.2d 125, 133 (Pa. Super. 2003)(citing *Com. v. Douglas,* 645 A.2d 226, 231-2)(Pa. 1994)).

Prejudice in the context of ineffective assistance of counsel requires a demonstration that there was a reasonable probability that but for counsel's error; the outcome of the proceeding would have been difference. *Com. v. Kimball,* 724 A.2d 326, 331 (Pa. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Com. v. Chambers,* 807 A.2d 872, 883 (Pa. 2002)(quoting *Strickland v. Washington,* 466 U.S. 668, 694 (1984)). Prejudice occurs when the errors were so serious as to deprive the defendant of a trial whose result is reliable. *Id.*

When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements of *Strickland* by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew

5

of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *Com. v. Sneed*, 45 A.3d 1096, 1108-9 (Pa. 2012).

In the instant case, Attorney Encarnacion was aware that Mr. Wollard existed and had discussed with Petitioner calling Mr. Wollard as a witness. In fact, both the defense and the Commonwealth knew of Mr. Wollard's existence and knew that Mr. Wollard was available and willing to testify. Attorney Encarnacion met with Mr. Wollard multiple times to discuss Petitioner's case. Despite Attorney Encarnacion's advice against ministering to Petitioner while in prison, Mr. Wollard met with Petitioner multiple times in prison. (N.T. PCRA Hearing, 9/10/14, p. 48.) Attorney Encarnacion testified that he had advised Mr. Wollard against meeting with Petitioner in prison because if Mr. Wollard was called as a witness, he would be subject to cross-examination and it was important for Mr. Wollard to remain as neutral as possible; Mr. Wollard ignored that advice. *Id.* at 48-49.

Attorney Encarnacion provided two very reasonable bases for his decision not to call Mr. Wollard as a witness. Mr. Wollard would have provided testimony inconsistent with the testimony Petitioner himself presented, and Mr. Wollard had a very vivid description of how the victim was drowned. *Id.* at 38. Mr. Wollard's testimony about the amount of sand and gravel found in the victim's mouth would have lent more evidence to the idea that Petitioner held the victim's face underwater, pressing it against the riverbed. Mr. Wollard would have provided evidence that was more prejudicial to the defense's case. At trial, the testimony provided that Petitioner was the one who pulled the victim out of the water and that Petitioner was the one who dialed 911; Mr. Wollard would have provided testimony that Petitioner was not as active of a participant in attempting to render aid to the victim. *Id.* at 52-53. Attorney Encarnacion was able to bring in the victim's violent propensities through four other witnesses at trial without

6

putting Mr. Wollard on the stand and subjecting the defense to Mr. Wollard's damaging, prejudicial testimony. *Id.* at 46. The four other witnesses were able to testify to incidents involving the victim's violent propensity that were almost identical to the incidents to which Mr. Wollard would have testified. *Id.* Attorney Encarnacion had several reasonable bases for declining to call Mr. Wollard as a witness, namely his close relationship to Petitioner while Petitioner was in prison, his inconsistent testimony, and most importantly, his vivid description of how the victim was full of sand and gravel after being held underwater. Petitioner was not prejudiced by the lack of this witness and, in fact, would have suffered more prejudicial testimony had Mr. Wollard testified.

Because Defendant has failed to prove prejudice or that trial counsel lacked a reasonable basis for his actions, trial counsel will not be deemed ineffective. *Com. v. Loner*, 836 A.2d 125, 133 (Pa. Super. 2003)(citing *Com. v. Douglas*, 645 A.2d 226, 231-2)(Pa. 1994)).

Therefore, the Court enters the following:

7

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CRIMINAL

COMMONWEALTH OF PENNSYLVANIA :
:
vs. : No. 2608-2011
:
TYRICK DONTE WALKER : PCRA

## ORDER

AND NOW, this 12th day of January, 2015, having considered Defendant's petition filed pursuant to the Post Conviction Relief Act[1] on April 17, 2014, the arguments of counsel, and the evidence presented at the hearing in this matter on September 10, 2014, Defendant's petition is hereby DENIED.

Defendant is hereby advised of his right to appeal this decision within thirty (30) days from the date of entry of this Order by the Lancaster County Clerk of Courts Office. Defense counsel is directed to timely provide this Order and notice to Defendant.

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

Joshua G. Parsons
Clerk of the Courts

BY THE COURT:

HOWARD F. KNISELY
JUDGE

LANCASTER COUNTY, PA
2015 JAN 12 PM 1:44
CLERK OF COURTS

Copies to: R. Russell Pugh, Esq., 1853 William Penn Way, Suite 15, P.O. Box 10368, Lancaster, PA 17605
~~Amber L. Gromiakowski~~, Assistant District Attorney
Todd Kriner

---

[1] 42 Pa.C.S.A. §§ 9541-9546.