J-A13027-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                               :           PENNSYLVANIA
                                               :
                v.                             :
                                               :
                                               :
                                               :
DON CARVICA HOGUE                 :
                                               :
            Appellant                     :   No. 1727 EDA 2021

Appeal from the PCRA Order Entered August 19, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006741-2014


BEFORE:  OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY DUBOW, J.:                    **FILED AUGUST 15, 2022**

Don Carvica Hogue ("Appellant") appeals from the Order entered in the Philadelphia County Court of Common Pleas denying without a hearing his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. He asserts that trial counsel provided ineffective assistance of counsel by failing to object to the admission of an audio recording. After careful review, we affirm.

We glean the relevant facts and procedural history from the PCRA court's December 10, 2021 Opinion filed pursuant to Pa.R.A.P. 1925(a). On March 3, 2017, the trial court sentenced Appellant to, *inter alia*, a term of incarceration of life without parole after a jury found him guilty of First-Degree

Aggravated Assault-Serious Bodily Injury and other offenses.[1]  This Court affirmed the judgment of sentence on August 5, 2019, in a non-precedential decision.  **Commonwealth v. Hogue**, No. 1049 EDA 2017 (Pa. Super. filed Aug. 5, 2019).

On September 27, 2019, Appellant filed a *pro se* PCRA petition.  The court appointed counsel, who filed an amended petition asserting trial counsel's ineffectiveness for failing to object to the admission of a portion of a tape recording of a phone call that Appellant had with his daughter, Rashada Siojo, which had been broadcasted over Ms. Siojo's vehicle's Bluetooth system as she drove herself, her brother, and her mother, who was Appellant's paramour, away from Appellant's home.  The court issued a Pa.R.Crim.P. 907 notice on June 10, 2021.  Appellant did not respond to the notice.  The court dismissed the Petition on August 19, 2021.

Appellant filed a Notice of Appeal.  Both Appellant and the court complied with Pa.R.A.P. 1925.

In his brief, Appellant raises three issues asserting that the court erred in dismissing his petition without a hearing because trial counsel provided ineffective assistance of counsel when:

> A. He failed to object to the admission of the taped conversation between Rashada Siojo and [Appellant] that allegedly took place on March 17, 2014.

---

[1] The jury based its verdict on evidence that on March 16, 2014, Appellant repeatedly stabbed a man under a train trestle in Philadelphia.  Because this was Appellant's fifth conviction for a crime of violence, the court sentenced Appellant to LWOP pursuant to 42 Pa.C.S. § 9714(a)(2).

      i)     The chain of custody for the taped conversation was not established;

      ii)    The taped conversation could not be authenticated; and

      iii)   The taped conversation violated the Wiretap Act further delineated in 18 Pa.C.S. § 5703, and the exception found in 18 Pa.C.S. § 5704(17) is not applicable to the facts at hand.

Appellant's Brief at 6-7.

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *Commonwealth v. Jarosz*, 152 A.3d 344, 350 (Pa. Super. 2016) (citing *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014)). "This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings." *Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010). To be eligible for relief under the PCRA, a petitioner must establish, *inter alia*, that his conviction or sentence resulted from one or more of the enumerated errors or defects found in 42 Pa.C.S. § 9543(a)(2), which include, relevant to this appeal, the ineffective assistance of counsel. 42 Pa.C.S. §§ 9543(a)(2)(ii). In addition, a petitioner must establish that the issues raised in the PCRA petition have not been previously litigated or waived, and that "the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." *Id*. at § 9543(a)(3), (a)(4).

- 3 -

There is no right to a PCRA hearing; a hearing is unnecessary where the PCRA court can determine from the record that there are no genuine issues of material fact. **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008). "With respect to the PCRA court's decision to deny a request for an evidentiary hearing, or to hold a limited evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015).

We presume that counsel has rendered effective assistance. **Commonwealth v. Bickerstaff**, 204 A.3d 988, 992 (Pa. Super. 2019). In order to overcome the presumption that counsel has provided effective assistance, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. **Commonwealth v. Bradley**, 261 A.3d 381, 390 (Pa. 2021). "Appellant bears the burden of proving each of these elements, and his failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." **See Jarosz**, 152 A.3d at 350.

Each of Appellant's claims challenge the admission of a partial recording of a telephone conversation that Appellant had with Ms. Sioja while she

travelled in a vehicle with her mother and her younger brother.[2]  The PCRA court observed:

> During the June 17, 2016 evidentiary hearing [on Appellant's suppression motion], Rashada Siojo had been subjected to direct and cross-examination concerning her memory of Appellant's verbal admissions both on and off the recording and the unique circumstances surrounding the partial recording of her chaotic quarrels with her father, the Appellant; she testified that all of the conversations had been broadcasted via Bluetooth speaker in the presence of her brother and her mother Lolita Moore, Appellant's paramour, while all of them traveled in Ms. Siojo's vehicle to escape the Appellant's wrath and potential violence.

> Notably, Ms. Siojo had driven to Appellant's residence after unrecorded verbal exchanges during which Appellant had said to her and her mom, Ms. Moore,[3] that he had critically stabbed a man over a lighter on the avenue.  Ms. Moore's daughter reported that she had been quite fearful for the safety of herself and her mother particularly after Appellant had demanded that Ms. Moore handle and dispose of the knife that he had used in the stabbing. She testified during the motion that she had independently decided to use her brother's cell phone to record part of the telephone conversation because of her well-founded safety fears. She further acknowledged in her verbatim statements provided to law enforcement that she had provided the recording simultaneously to law enforcement investigators after she had driven her family members and herself from Appellant's home to the police station in a panicked state.

PCRA Ct. Op., 12/10/21, at 10-11.[4]

---

[2] The relevancy of the contents of the challenged recordings is not an issue in this appeal.

[3] Ms. Moore was at Appellant's house during these initial, unrecorded conversations that Ms. Sioja had with Appellant.

[4] The PCRA court also observed: "Ms. Siojo had reluctantly testified during the trial in front of Appellant, her father, and had partially altered her testimony
*(Footnote Continued Next Page)*

Appellant first contends that counsel provided ineffective assistance by not challenging the admission of the taped conversation on the basis of the Commonwealth's failure to establish chain of custody. Appellant's Br. at 26. He argues that the Commonwealth presented no evidence "as to which police officer initially received the phone and taped conversation of March 17, 2014, from Siojo's brother" and proffered no evidence "that the phone and taped conversation was even in the possession of the Commonwealth from the time it was taken to the time of trial." *Id*. at 27. Appellant next contends that counsel erred in failing to object to the admission of the taped conversation because it could not be authenticated. *Id*. at 27-28. Finally, Appellant contends that counsel should have objected to the admission of the tape recording because the telephone was used as a recording device and was, therefore, included in the Wiretap Act's definition of an "electronic, mechanical or other device," and the recording made with Ms. Sioja's brother's cell phone was not subject to the exception provided in 18 Pa.C.S. 5704(17) because the brother was not a victim or witness. *Id*. at 28-30. He concludes that "[b]ut

_____

to distance herself from her direct involvement in the taping of her conversation with her brother's cell phone. Her previous testimony during the motion to suppress physical evidence had been far more detailed, less hostile, and far more consistent with her written and adopted verbatim statement that had also been admitted into evidence at trial as Commonwealth Exhibit #9. Within her previous verbatim adopted inconsistent statements to investigators, she had fully acknowledged her role with respect to the recording as well as the preceding events that had included Appellant's admissions to her and to her mother that he had stabbed the man and the reasons for the stabbing." PCRA Ct. Op. at 16.

for Counsel's inactions, the outcome of the proceeding would have been different, and he would have been found not guilty." *Id*. at 31.

The PCRA court concluded that no PCRA hearing was required because the issues raised had been vigorously litigated before and during trial.

> Appellant's claims as raised within the PCRA filings remain factually flawed and legally unsound because Appellant's trial counsel had vigorously objected to the admission of the referenced evidence within the pre-trial evidentiary hearing concerning his motion to suppress and associated motion *in limine* that had been conducted on June 17, 2016. Appellant's trial counsel also raised a similar objection to introduction [of]the same recorded portion of the conversation during trial.

Tr. Ct. Op., dated 12/20/21, at 7.

The Hon. Anne Marie B. Coyle has authored a comprehensive, thorough, and well-reasoned Opinion addressing each issue Appellant raises in this appeal with citation to and discussion of the record and relevant case law. *See, e.g., id*., at 13-18 (discussing, *inter alia*, Ms. Siojo's testimony at trial identifying her voice and Appellant's voice from the recording, the admission of a photograph of the brother's cell phone, and "admitted documents [that] additionally and independently verified authenticity and chain of custody of all prosecution evidence including the recording at issue"); at 18-25 (addressing the Wiretap Act, 18 Pa.C.S. §§ 5703, 5704(17), and relevant case law, observing that (1) a telephone is exempt from the Act, factually distinguishing *Commonwealth v. Smith*, 136 A.3d 170, 178 (Pa. Super. 2016); (2) even

if a telephone is not exempted from the Wiretap Act's definition of "device,"[5] the Act provides an exception for witnesses to intercept communications "when they have reasonable suspicion that the intercepted party . . . is about to commit or has committed a crime of violence, and there is reason to believe that evidence of the crime of violence may be obtained from the interception" (citing 18 Pa.C.S. § 5704(17)); (3) the phone call was the continuation of a previous conversation in which Appellant admitted to stabbing a man over a lighter and had threatened Ms. Siojo and her mother; (4) even if the exception provided in Section 5704(17) were not applicable, the admission the tape recording was harmless error because it was cumulative of testimony presented at trial from the victim and Ms. Sioja, and the outcome of the trial would not have been different had counsel raised this specific challenge).

The PCRA court's opinion is supported by the record. We discern no abuse of discretion in the court's denial of Appellant's PCRA petition without a hearing. We, thus, adopt the PCRA court's Opinion as our own and affirm the order dismissing Appellant's petition.

We instruct the parties to annex a copy of the PCRA court's December 20, 2021 Opinion to any future filings.

Order affirmed.

_____

[5] This Court, in addressing Appellant's direct appeal, rejected his argument that a telephone is included in the Wiretap Act's definition of "electronic, mechanical or other device." **Commonwealth v. Hogue**, No. 1045 EDA 2019 (Pa. Super. filed Aug. 5, 2019).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/15/2022</u>

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CP-51-CR-0006741-2014** |
| **vs.** | : | |
| **DON CARVICA HOGUE** | : | **SUPERIOR COURT NO. 1727 EDA 2021** |

**FILED**

**OPINION**

DEC 2 0 2021

Appeals/Post Trial
Office of Judicial Records

**COYLE, J.**                                                    **DECEMBER 20, 2021**

Appellant, Don Carvica Hogue, as the above-named Defendant and Petitioner, seeks review of the Order entered on August 19, 2021 by the Honorable Anne Marie B. Coyle as Judge of the First Judicial District of Pennsylvania, Court of Common Pleas, hereinafter referred to as "this Court," denying his petitions that had been filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §9541 *et seq.*

## I.    FACTUAL AND PROCEDURAL HISTORY

On March 18, 2014, Appellant was arrested and was charged with *inter alia*, Aggravated Assault-Attempt/Cause Serious Bodily Injury[1], Simple Assault[2], Recklessly Endangering

---

[1] 18 Pa. C.S.A. § 2702 (F1)

[2] 18 Pa. C.S.A. § 2701(M2)

1

Another Person[3], and Possession of an Instrument of Crime[4] for viciously and repeatedly stabbing and nearly killing a man on March 16, 2014, in the vicinity of the 4600 block of Frankford Avenue in the City and County of Philadelphia, following a minor disagreement over the use of a cigarette lighter.

On June 17, 2016, an evidentiary hearing concerning the filed pre-trial motion to suppress and related motion *in limine* was litigated before this Court. These defense motions which had been related to the defense objection to the proposed trial admission of a partially recorded telephone conversation were denied. Selection of the jury panel began with this Court as the presiding jurist on December 13, 2016. At the conclusion of the jury trial, Appellant was found guilty of the first-degree felony graded offense of Aggravated Assault-Serious Bodily Injury Caused and Attempted, and misdemeanor offenses of Recklessly Endangering Another Person, and Possession of an Instrument of Crime. The charge of Simple Assault was *nolle prosed*. Sentencing was deferred pending preparation of the pre-sentence report and mental health evaluation.

On March 3, 2017, after a full and fair evidentiary hearing, this Court, pursuant to 42 Pa. C.S. §9714, imposed a sentence of life imprisonment without the possibility of parole on the first-degree felony charge of Aggravated Assault-Serious Bodily Injury Caused. As to the offense of Possessing an Instrument of Crime, a consecutive sentence of two and one half (2½) to five (5) years of incarceration, followed by one (1) year to two (2) years of incarceration for Recklessly Endangering Another Person was imposed. Mark W. Adams, Esquire represented Appellant during pre-trial motions, trial and sentencing hearing.

---

[3] 18 Pa. R.C.A. § 2705 (M2)

[4] 18 Pa. C.S.A. § 907 (M1)

2

Attorney Adams filed a Notice of Appeal and a *Motion to Withdraw as Counsel* on March 20, 2017.[5] Attorney Adams' motion to withdraw was granted on March 22, 2017 and James Richard Lloyd, III, Esquire, was appointed as counsel. On November 8, 2017, Attorney Lloyd filed a Statement of Errors Complained of on Appeal. On November 13, 2017, the Defendant was permitted to precede *pro se* after this Court had conducted full *"Grazier"* colloquy and hearing and Attorney Lloyd was permitted to formally withdraw his representation. On December 7, 2017, the Defendant filed a *pro se* Statement of Errors Complained of on Appeal.

On August 5, 2019, the Superior Court of Pennsylvania affirmed judgment of sentence in the Non-Precedential Memorandum Decision docketed under **1049 EDA 2017** and in so doing adopted most of the trial court's factual recitation and upheld the trial court's decision to denying the defense pre-trial suppression motion that had sought to preclude "the Commonwealth from playing the cell phone recording made by his adult daughter, Rashada Siojo." The reviewing Superior Court also specifically rejected the defense's direct appellate claim that the recorded portion of the subject telephone conversation had been included within the definition of an "electronic, mechanical or other device" of the Wiretap Act, 18 PA.C.SA. 5702 and upheld the imposition of the Order of Sentence. No further appeal was filed.

On September 27, 2019, Petitioner filed a *pro se* handwritten petition seeking post-conviction collateral relief. Attorney Lloyd was permitted to withdraw and Scott P. Sigman, Esquire was appointed as Appellant's counsel. Attorney Sigman filed an Amended Petition alleging counsel's ineffectiveness in failing to object to the admission of the taped conversation between Rashada Siojo ("Siojo") and Appellant that had allegedly taken place on March 17,

---

[5] On March 10, 2017, the Defendant filed a *pro se* Post-Conviction Relief Act (PCRA) petition. This petition was subsequently dismissed as prematurely filed on November 9, 2017.

3

2014. According to Appellant, trial counsel was ineffective for filing to object to the tape's introduction because: "(1) the chain of custody for the taped conversation had not been established; (2) the taped conversation could not have been authenticated; and (3) the taped conversation had violated the Wiretap Act as delineated in 18 Pa.C.S. § 5703; and that the exception found in 18 Pa.C.S.A. §5704(17) had not been applicable to the facts at hand."

On April 13, 2021, the Commonwealth of Pennsylvania, by and through the District Attorney of Philadelphia, and Assistant District Attorney Jonathon M. Frisby, Esquire, filed a Motion to Dismiss. On April 14, 2021, Appellant filed a counseled brief in opposition to the Commonwealth's motion to dismiss. After conducting a thorough review of the entire trial and appellate record, this Court dismissed Appellant's requests for relief that had been filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §9541 *et seq.* on August 19, 2021.[6] Scott Sigman, Esquire filed a timely Notice of Appeal and remains Appellant's counsel of record to date.

## II. STANDARD OF REVIEW

The law in Pennsylvania presumes that trial counsel was effective. Commonwealth v. Rollins, 558 Pa. 532, 738 A.2d 435 (1999); Commonwealth v. Quier, 366 Pa.Super. 275, 531 A.2d 8, 9 (1987). Therefore, when a claim of ineffective assistance of counsel is made, it is the petitioner's burden to prove such ineffectiveness; that burden does not shift. Commonwealth v. Cross, 535 Pa. 38, 634 A.2d 173, 175 (1993), *cert. denied,* 115 S.Ct. 109, 130 L.Ed.2d 56 (Pa. 1994); Commonwealth v. Marchesano, 519 Pa. 1, 544 A.2d 1333, 1335-36 (1988); Commonwealth v. Tavares, 382 Pa. Super. 317, 555 A.2d 199, 210 (1989), *appeal denied,* 571

---

[6] The dismissal occurred more than twenty days after Petitioner was served with notice of the forthcoming dismissal of his PCRA petition. Pa. R. Crim. P. 907.

4

A.2d 382 (Pa. 1989).

In determining whether counsel rendered ineffective assistance, the reviewing court must ascertain whether the issue underlying the claim has arguable merit. This requirement is based upon the principle that counsel will not be found ineffective for failing to pursue a frivolous claim or strategy. Second, if the petitioner's claim does have arguable merit, the court must determine whether the course chosen by counsel had some reasonable basis designed to serve the best interest of the petitioner. If a review of the record reveals that counsel was ineffective, the court must determine whether the petitioner has demonstrated that counsel's ineffectiveness worked to his prejudice. Commonwealth v. Miller, 605 Pa. 1, 987 A.2d 638 (2009); Commonwealth v. Hutchinson, 521 Pa. 482, 556 A.2d 370 (1989); Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987); Commonwealth v. Pendola, 416 Pa.Super. 568, 611 A.2d 761 (1992), *appeal denied*, 629 A.2d 1378 (Pa. 1993). Failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim. Commonwealth v. Hudson, 2003 PA Super 104, 820 A.2d 720, 726 (2003).

In order to establish prejudice, a petitioner must show that "counsel's ineffectiveness was of such magnitude that the verdict essentially would have been different absent counsel's alleged ineffectiveness." Commonwealth v. Howard, 538 Pa. 86, 645 A.2d 1300, 1308. *See also* Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of a PCRA claim, petitioner must not only establish ineffective assistance of counsel, he must also plead and prove that counsel's stewardship "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *See* 42 Pa.C.S.A. §9543 (a)(2)(ii); Commonwealth v. Rowe, 411 Pa.Super. 363, 601 A.2d 833 (1992).

Counsel is never ineffective for failing to make a frivolous objection or motion.

5

Commonwealth v. Groff, 356 Pa.Super. 477, 514 A.2d 1382, 1386 (1986), *appeal denied*, 531 A.2d 428 (Pa. 1987); Commonwealth v. Davis, 313 Pa. Super. 355, 459 A.2d 1267, 1271 (1983). Similarly, counsel is never ineffective for failing to raise a frivolous issue in post-verdict motions or on appeal. Commonwealth v. Thuy, 424 Pa. Super. 482, 623 A.2d 327, 355 (1993); Commonwealth v. Tanner, 410 Pa. Super. 398, 600 A.2d 201, 206 (1991).

When applying the reasonable standards of review set forth in this Commonwealth of Pennsylvania, Appellant has failed to demonstrate any legitimate basis for the relief requested.

## III.   ISSUES ON APPEAL

Appellant raises the following issues on appeal (set forth verbatim):

1. The lower court erred in dismissing Defendant's Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of August 19, 2021, without affording him an evidentiary hearing since Defendant's conviction and sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

2. The lower court erred in dismissing Defendant's Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of August 19, 2021, without affording him an evidentiary hearing since, under the totality of circumstances, there are genuine issues concerning material facts and legitimate purposes would be served by such hearing.

3. The lower court erred in dismissing Defendant's Petition for Post-Conviction Collateral Relief pursuant to the Pennsylvania Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9542-46, by Court Order of August 19, 2021, without affording him an evidentiary hearing since Defendant's petition makes out a *prima facie* case warranting such hearing where under the totality of circumstances, trial counsel provided ineffective assistance that lacked any reasonable basis which prejudiced the Defendant:
    A. He failed to object to the admission of the taped conversation between Rashada Siojo and the Defendant that allegedly took place on March 17, 2014.
        i) The chain of custody for the taped conversation was not established;
        ii) The taped conversation could not be

6

authenticated; and

iii) The taped conversation violated the Wiretap Act further delineated in 18 Pa.C.S. § 5703, and the exception found in 18 Pa.C.S.A. § 5704(17) is not applicable to the facts at hand.

## IV.  DISCUSSION

To support his demand for post-conviction relief, Appellant has presented several interrelated claims of ineffective assistance of his former trial counsel, Mark Adams, Esquire. Appellant contended that his trial counsel had failed to object to the admission of the extrapolated portion of telephone conversations that had occurred on March 17, 2014 between Appellant and his daughter, Rashada Siojo. Summarily, Appellant's claims as raised within the PCRA filings remain factually flawed and legally unsound because Appellant's trial counsel had vigorously objected to the admission of the referenced evidence within the pre-trial evidentiary hearing concerning his motion to suppress and associated motion *in limine* that had been conducted on June 17, 2016. Appellant's trial counsel also raised a similar objection to introduction to the same recorded portion of the conversation during trial.

More importantly, the partially recorded telephone conversation did not violate the referenced "Wiretap Act" because it had fallen well within the exception contained within the statutory language of 18 PA. C.S.A. §5704 (17). Indeed, the trial court's legal conclusion and supportive credibility finding that the subject recording had fallen within this statutory exception had been upheld as a proper exercise of trial court discretion by the reviewing Pennsylvania Superior Court in response to Appellant's first direct appeal. Commonwealth v. Hogue, Unpublished Memorandum Opinion, 1049 EDA 2017, August 5, 2019.

It is firmly established that to prevail on a claim alleging counsel's ineffectiveness, a petitioner must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's

7

course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness. *See* Commonwealth v. Johnson, 2005 PA Super 59, 868 A.2d 1278 (2005); Commonwealth v. Douglas, 537 Pa. 588, 597, 645 A.2d 226, 230 (1994).

In order to meet the prejudice prong of the ineffectiveness standard, a petitioner must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. Commonwealth v. Kimball, 555 Pa. 299, 724 A.2d 326 (1999); Douglas, 537 Pa. at 597, 645 A.2d at 230. Such a showing effectively demonstrates that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," as required by Section 9543 (a)(2)(ii) of the PCRA. Kimball, *supra.*

The right to an evidentiary hearing on a Post-Conviction Relief Act ("PCRA") petition is not absolute. Commonwealth v. Miller, 2019 PA Super 188, 212 A.3d 1114 (2019). A court has discretion to dismiss a PCRA petition without a hearing when the court is satisfied there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. Commonwealth v. Smith, 2020 PA Super 291, 2020 WL 7501859 (2020). It is within the PCRA court's discretion to decline to hold an evidentiary hearing if a petitioner's claim is patently frivolous and has no support either in the record or other evidence. Miller, *supra.*

The Superior Court's review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. An appellate court views the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party. With respect to

the PCRA court's decision to deny a request for an evidentiary hearing, such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion. Commonwealth v. Mason, 634 Pa. 359, 130 A.3d 601, 617 (2015).

In the instant matter, Appellant argued that an evidentiary hearing should have been held because, under the totality of circumstances there were "genuine issues concerning material facts and counsel's actions (or inaction) so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Specifically, Appellant maintained that trial counsel had been ineffective for failing to object to the admission of the taped conversation between himself and his daughter, Rashada Siojo that had taken place on March 17, 2014.

Appellant's trial counsel had however litigated the defense filed motion to suppress and associated motion *in limine* during the pre-trial evidentiary hearing held before this Court on June 17, 2016; The resulting testimonial evidence and ensued verbal debate effectively reflected Appellant's desire to prospectively exclude the trial admission of the subject recorded portion of the telephone conversation. As a genesis of his discussion, Appellant depended upon the tacit acknowledgement of the conversation's authenticity and chain of custody. Trial counsel argued that the conversation had been protected under the Fourth, Fifteenth, Fourteenth Amendment, Article 1, Section 8, Section 9 of the Constitution and therefore should not be admitted into evidence:

> **MR. ADAMS:** Yes, Your Honor. It was going to be *my motion to suppress a certain recording made between Mr. Hogue and a family member, specifically his daughter.*
>
> *The recording was made by Rashada Siojo. Also, part of the conversation involved his wife.*

9

> *He had protected privacy interests in the conversation between his wife and daughter.*
>
> *And this family conversation is protected by the Fourth, Fifteenth, Fourteenth Amendment, Article 1, Section 8, Section 9. There was a -- there is a reasonable expectation of privacy among family conversations, and that recording was in violation.*
>
> Also, there is a mention in a statement given by the daughter that states that during the conversation Ms. Nixon heard "my father" make certain comments.
>
> Ms. Nixon is an assistant district attorney, your Honor. She was listening to part of the conversation.
>
> She did not make Mr. Hogue aware that she was listening, and we believe that also violated his Constitutional rights and his expectation of privacy and also might have violated the Wiretap Act.
>
> And that's a recap of the argument made.

*   *   *

(N.T., 06/17/16, pp. 15-16). [emphasis added]

During the June 17, 2016 evidentiary hearing, Rashada Siojo had been subjected to direct and cross-examination concerning her memory of Appellant's verbal admissions both on and off the recording and the unique circumstances surrounding the partial recording of her chaotic quarrels with her father, the Appellant; she testified that all of the conversations had been broadcasted via Bluetooth speaker in the presence of her brother and her mother Lolita Moore, Appellant's paramour, while all of them traveled in Ms. Siojo's vehicle to escape the Appellant's wrath and potential violence.

10

Notably, Ms. Siojo had driven to Appellant's residence after unrecorded verbal exchanges during which Appellant had said to her and her mom, Ms. Moore, that he had critically stabbed a man over a lighter on the avenue. Ms. Moore's daughter reported that she had been quite fearful for the safety of herself and her mother particularly after Appellant had demanded that Ms. Moore handle and dispose of the knife that he had used in the stabbing. She testified during the motion that she had independently decided to use her brother's cell phone to record part of the telephone conversation because of her well-founded safety fears. She further acknowledged in her verbatim statements provided to law enforcement that she had provided the recording simultaneously to law enforcement investigators after she had driven her family members and herself from Appellant' home to the police station in a panicked state.

Upon conclusion of all evidence and arguments, the defense motion was denied. Pursuant to Pa. R. Crim. P. 581(J), "If the court determines that the evidence shall not be suppressed, such determination shall be final, conclusive, and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its suppressibility." Id.

Furthermore, at trial, counsel again raised the objection that the subject recording should not be admitted or played for the jury as both Ms. Siojo and her mother, Ms. Moore (Appellant's girlfriend) were present to testify:

> **MR. GRANT:** Second issue, Judge, is we already had a motion to suppress back in June related to the recording that was made. I don't believe that -- we fleshed out pretty well extensively the reason that that recording was made. I don't believe that the motive behind recording the conversation is at issue anymore in terms of a trial issue. I don't believe it's relevant and I do believe it has the potential to open up any sort of a history. And I don't know what it is. I don't think that the relationship's at issue are relevant for trial purposes. So I would be

11

asking to limit the testimony related to a recording of just that in that day I heard a conversation and I recorded the conversation and this is the recording of that conversation as opposed to the motive and the reason for doing so.

MR. ADAMS: Your Honor, *I would object to the recording be entered in because she will be here to testify, Your Honor. She can testify to that. The actual recording --*

(N.T. 12/12/16, pp. 8-9).

The point of a motion to suppress physical evidence is to eliminate certain tangible evidence from the Commonwealth's trial armamentarium, on grounds that the manner of the government's acquisition of that evidence involved a violation of the defendant's constitutional rights. Commonwealth v. Millner, 888 A.2d 680, 693 (Pa. 2005). As the Millner court further explained, "[w]hether that evidence is to be suppressed does not depend upon ... how strong the evidence is, or whether it is subject to trial contradiction, explanation or rebuttal; the focus is upon its manner of acquisition, and how that manner of acquisition implicated the defendant's constitutional rights." Id. Moreover, discrepancies concerning the evidence affect the weight of the evidence given by the trier of fact but do not affect the admissibility of such evidence. Id.

Here, Appellant's trial counsel had fully reasoned that the Commonwealth had obtained the tape recording in violation of his constitutional rights. However, following a full and fair suppression hearing, this Court stated that it did "not find that [the taped recording was] overly prejudicial and/or cumulative;" that it was probative to the facts at issue; and that the findings of facts as testified to by the witnesses to be credible." (N.T., 06/17/2016, p. 69).

Thus, the PCRA court was correct in ruling that an evidentiary hearing based on the admissibility of the recording would have been "frivolous" and therefore, unnecessary. This Court reasonably applied Strickland to find that counsel could not have been ineffective for

12

failing to pursue a frivolous motion. The initial appellate review had reflected adoption of the Court's factual findings and legal reasoning within its affirming decision. *See* Commonwealth v. Hogue, Unpublished Memorandum Opinion, 1049 EDA 2017, August 5, 2019, pp. 8-15. Thus, no further development of salient facts following another evidentiary hearing concerning the subsequent PCRA claims was deemed essential.

Further, Appellant's first two sub-issues regarding the recording - that the chain of custody for the taped conversation was not established and that "it could not be authenticated," lacked factual and legal substance. Admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, an appellate court will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

Thus, an appellate court's standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. Commonwealth v. Lopez, 57 A.3d 74, 81 (Pa. Super. 2012) (quotation marks and citation omitted). "Physical evidence may be properly admitted despite gaps in testimony regarding custody." Commonwealth v. Witmayer, 144 A.3d 939, 950 (Pa. Super. 2016) (citation omitted). Objections to the chain of custody are properly directed to the weight of the evidence, not its admissibility. *See* Id. Even where the court rules evidence is admissible, the party opposing the admission may still offer other evidence relevant to its weight or credibility. See Pa.R.E. 104(e).

Demonstrative evidence, like the recorded cell phone conversation here, "is tendered for the purpose of rendering other evidence more comprehensible to the trier of fact." Commonwealth v. McKellick, 24 A.3d 982, 986 (Pa. Super. 2011) (quotation marks and citation

13

omitted). A party offering such evidence must first authenticate it. See Pa.R.E. 901(a). "[A]uthentication generally entails a relatively low burden of proof[.]" Commonwealth v. Murray, 174 A.3d 1147, 1157 (Pa. Super. 2017) (citations omitted). The authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Pa.R.E. 901(a). Demonstrative evidence may be permissibly entered into evidence, so long as its proponent establishes that the "evidence fairly and accurately represents that which it purports to depict." McKellick, 24 A.3d at 987 (citation omitted).

Moreover, the standard for establishing a chain of custody for admission of physical evidence was stated by the court in Commonwealth v. Hudson, 489 Pa. 620, 414 A.2d 1381 (1980):

> "The admission of demonstrative evidence is a matter committed to the discretion of the court . . . Furthermore, there is no requirement that the Commonwealth establish the sanctity of its exhibits beyond a moral certainty . . . Every hypothetical possibility of tampering need not be eliminated; it is sufficient that the evidence, direct or circumstantial, establishes a reasonable inference that the identity and condition of the exhibit remained unimpaired until it was surrendered to the trial court . . . Finally, physical evidence may be properly admitted despite gaps in testimony regarding its custody. . . ."

Id., 489 Pa. at 631-32, 414 A.2d at 1387 (citations omitted).

At trial, the Commonwealth moved to admit the part of her telephone conversation that had been simultaneously recorded with her brother's cell phone while she had been speaking via a Bluetooth speaker with her father (Appellant), while inside her automobile accompanied by her mother and her brother.

BY MR. GRANT:    Q. Okay. Now, you said that you would recognize what I will mark as C-2, the recording. I will play it and ask you to identify it.
A. Okay.
(Commonwealth Exhibit 2 marked for identification.)
(Audio played.)

14

BY MR. GRANT:    *Q. Do you recognize that?*
*A. Yes.*
*Q. Was that your voice on one end?*
*A. Yes.*
*Q. And your father's on the other?*
*A. Yes.*
*Q. Is that the record that you made relating to your phone call with your dad that day? [*
*A. Yes.*
**Q.** Okay. The phone we're looking at in C-2, whose phone is that?
**A.** That's my brother's phone.
**Q.** Is that the phone that was used in making the recording?
**A.** Yes.
*Q. Who is holding the phone in this video, if you remember?*
*A. That's my brother's hand.*
*Q. Okay.*

THE COURT:    *Who's taking the picture?*
THE WITNESS:    *I think the police at the station or something. I don't remember.*

BY MR. GRANT:    *Q. Fair to say –*
*A. I don't remember them taking the picture. I don't remember that.*
*Q. At the very top, we're seeing "Voice Memos."*
*A. Yes.*
*Q. Is that the app you used to record the conversation?*
*A. Mm-hmm.*
**Q.** You told us you wanted it to protect yourself. Did you play this for the police officers after you had made the report?

**A.** Yes.
**Q.** And is it fair to say that this was actually a video of you playing it for the police officers after it had already been done?

**A.** The video? What do you mean?
**Q.** The video we're looking at here.
**A.** The picture. That's a picture, you're saying?

THE COURT:    Yeah.
THE WITNESS:    That's a picture.
THE COURT:    It's on pause. Does that accurately reflect what they did at the police station?

15

THE WITNESS:     I don't recall that.

THE COURT:     All right. Moving on.

(N.T., 06/17/16, pp. 30-33).

As demonstrated above, the recording had been fully authenticated by the witness who had been familiar with the subject matter and thus able to testify that it had been a fair and accurate depiction of the event. Commonwealth v. McKellick, 24 A.3d 982 (Pa. Super. 2011). At trial, Ms. Siojo testified that the police had taken a picture/video of the phone that had been used to record the conversation and that the evidence presented at trial had been an accurate copy of the recording that Ms. Siojo's brother had used to make the recording (N.T., 12/13/2016, p. 93).

Ms. Siojo had reluctantly testified during the trial in front of Appellant, her father, and had partially altered her testimony to distance herself from her direct involvement in the taping of her conversation with her brother's cell phone. Her previous testimony during the motion to suppress physical evidence had been far more detailed, less hostile and far more consistent with her written and adopted verbatim statement that had also been admitted into evidence at trial as Commonwealth Exhibit #9. Within her previous verbatim adopted inconsistent statements to investigators, she had fully acknowledged her role with respect to the recording as well as the preceding events that had included Appellant's admissions to her and to her mother that he had stabbed the man and the reasons for the stabbing.

Regardless, at trial Ms. Siojo fully admitted that she had recognized her voice and Appellant's voice that could be heard and that the recording had been accurate as to that portion that had been was played before the jury. Id. at 89-91. Indeed, the introduced exhibit of the recording had included the photograph of the hand holding her brother's cell phone, that had been used to speak to her father and partially record their three-way telephone conversation.

16

During her trial testimony, Ms. Siojo also acknowledged her receipt of written correspondence that had contained visceral threats that had been sent to her from the prison by Appellant. Those threats and denigrating comments had been hand written in bold capped letters upon documents that had included the letter that had been forwarded to Appellant from his trial counsel and the associated police paperwork as well as the underlying Search Warrant Affidavits of probable cause, PARS Reports, indicting bills of information and associated property receipts. Those admitted documents additionally and independently verified authenticity and chain of custody of all prosecution evidence including the recording at issue.

Ms. Siojo had grudgingly recognized her father's handwriting on each of the aforementioned items as collectively marked and moved into the trial evidence as Commonwealth Exhibit C-11 (A through C). One of the opening lines handwritten upon these documents that had been sent to Ms. Siojo's home within what can only be described as Appellant's demonstration of his intended violent retribution began with the words:

> "APRIL OF 2015 WILL BE 13 MONTH'S I'M JAILED ALL BECAUSE MY OWN DAUGHTER WENT AND TOLD THE POLICE I STABBED AN INDIVIDUAL!!! YOU RAT ASS FAKE ASS WANT TO BE A FILIAP! SLASHED WHITE KRAKKA ASS BITHC!!!...THE GUY DIDN'T HAVE ANY IDEA WHO I WAS UNTIL MY DAUGHTER WENT AND RATTED ME OUT! THE NEXT TIME YOU SAY OR DO ANYTHING..."

*See* Commonwealth Exhibit C-11A. Query whether it is disingenuous for Appellant to belatedly raise the lack of authenticity or chain of custody when his own preceding written diatribe and motion arguments had reflected his complete adoption of both of these concepts? The deliberating jury as the duly appointed collective factfinder assessed Ms. Siojo's credibility of her statements and versions of events.

17

Moreover, Ms. Siojo's cumulative testimony independently and sufficiently authenticated that the recording had been a fair and accurate rendition of the conversation. Her written introduced verbatim signed statement that she had provided to Detectives immediately after she had rescued her mother, further corroborated both chain of custody and authentication of the recording as reflected within the admitted Commonwealth Exhibit #9. Frankly, both chain of custody and authentication had constituted non-debatable subjects. Similarly, Ms. Lolita Moore's hostile trial testimony along with her admitted prior verbatim written inconsistent statements independently corroborated the authenticity of the subject recording.

Contrary to Appellant's contention, the Commonwealth was not required to present testimony from the police officer who had taken the photograph of the cell phone that had recorded the conversation. Rather, the Commonwealth's obligation was to ensure a witness familiar with the subject matter - Ms. Siojo, testified that the audio played at the hearing and trial had been the actual conversation between her and her father; at trial and during the motion hearing, Ms. Siojo positively identified both her and Appellant's voices. Thus, the trial court did not abuse its discretion in admitting the recording and counsel, and as a result, no grounds had been available to the defense to legitimately move to suppress the recording. *See* Commonwealth v. Grimes, 648 A.2d 538, 543 (Pa. Super. 1994) ("trial counsel cannot be deemed ineffective for failing to file meritless motions to suppress"). Therefore, no relief is due.

Appellant's final argument is that his trial counsel had failed to object on the basis that the taped conversation had violated the Wiretap Act as delineated in 18 Pa.C.S. § 5703, and the exception found in 18 Pa.C.S.A. § 5704(17) had not been applicable "to the facts at hand." The claim that counsel was ineffective for failing to move to suppress the taped conversation on grounds that the recording violated Pennsylvania's Wiretap laws is without merit.

18

Section 5703 of the Wiretap Act provides that "a person is guilty of a felony of the third degree if he ... intentionally **intercepts,** endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication." 18 Pa.C.S. § 5703(1) (emphasis added). The Wiretap Act defines "intercept" as "[a]ural or other acquisition of the contents of any wire, electronic or oral communication through the use of any **electronic, mechanical or other device.**" 18 Pa.C.S. § 5702 (emphasis supplied). The Act further defines an "electronic, mechanical or other device" as, *inter alia:*

> **Any device** or apparatus, including, but not limited to, an induction coil or a telecommunication identification interception device, that can be used to intercept a wire, electronic or oral communication **other than:**
>
> (1) **Any telephone** or telegraph instrument, equipment or facility, **or any component thereof,** furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business, or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business, or being used by a communication common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties....
> *Id.* (emphasis supplied).

18 Pa.C.S. § 5702. "Pennsylvania's [ ] Wiretap Act emphasizes the protection of privacy," and, therefore, "the provisions of the Wiretap Act are strictly construed." Commonwealth v. Spangler, 570 Pa. 226, 809 A.2d 234, 237 (2002).

In the present case, Appellant's claim lacked factual and legal merit because the trial counsel had effectively sought suppression of the recording as a violation of the Wiretap Act. This Court held an evidentiary hearing on June 7, 2016, at which time counsel moved to suppress the recording, and argued that it had been recorded under the direction of Assistant District Attorney Deborah Nixon (N.T., 6/7/16, pp. 15-16). At the conclusion of the suppression hearing, this Court determined that no prohibited state action had taken place and that the recording had

19

had been exempted under Section 5704(17) exemption for recorded communications. (N.T., 6/7/16, p. 69).

As the affirming Superior Court in the instant case acknowledged in its initial review of the trial record, a court may suppress evidence obtained in violation of the Wiretap Act. 18 Pa. C.S. § 5721.1(b) (defendant may motion to exclude contents of interception not excepted under Section 5704). Section 5704(17) provides an exception, where any victim, witness, or licensed private detective may intercept the contents of any wire, electronic, or oral communication so long as there is reasonable suspicion that the intercepted party has committed a violent crime, and that evidence of that crime may be obtained from the interception. 18 Pa. C.S. § 5704(17).

The Wiretap Act protects one's privacy by prohibiting the intentional interception of any wire, electronic, or oral communication, and the intentional disclosure or use of the contents of any such communication, or any evidence derived therefrom. 18 Pa. C.S. § 5703(1)-(3). *See also Commonwealth v. Spangler*, 809 A.2d 234, 237 (Pa. 2002) (Wiretap Act focuses on protection of privacy and must be strictly construed). A court may suppress evidence obtained in violation of the Wiretap Act. 18 Pa. C.S. § 5721.1(b) (defendant may motion to exclude contents of interception not excepted under Section 5704). Section 5704(17) provides an exception, where any victim, witness, or licensed private detective may intercept the contents of any wire, electronic, or oral communication so long as there is reasonable suspicion that the intercepted party has committed a violent crime, and that evidence of that crime may be obtained from the interception. 18 Pa. C.S. § 5704(17).

Because trial counsel had moved to suppress the recorded conversation on grounds that the recording had violated the Wiretap Act, and because this Court specifically held after hearing supporting evidence that Section 17 had provided an applicable exception to the Act, Appellant's

20

suppression challenge had been properly denied. At this point trial counsel, therefore, could not be deemed ineffective for failing to do something that he did, in fact, do. Thus, no relief is due.

Within the responsive *Brief In Opposition To Commonwealth's Motion To Dismiss*, Appellant contended however, that because Ms. Siojo's brother's phone had been utilized as a tape recorder during the conversation-in-question, that conversation should have been precluded from trial upon litigation of a motion or during trial based upon the Superior Court of Pennsylvania's analysis espoused in Commonwealth v. Smith, 136 A.3d 170, 178 (Pa. Super. 2016) To frame his ineffectiveness claim, Appellant argued that the device used had not been the statutory equivalent of a telephone which is exempt from the definition of an "interception device" as specifically covered by the Wiretap Act (*see* Commonwealth v. Smith, 136 A.3d 170, 178 (Pa. Super. 2016) (noting that an employee's surreptitious tape recording of a workplace conversation with his supervisor would violate 18 Pa. C.S.A. § 5703) and therefore, had constituted a violation of the Wiretap Act as outlined in 18 Pa.C.S. § 5703.

The underlying facts and corresponding legal rationale posited in the Smith holding, however remains readily distinguishable from the instant case and therefore would not have affected this Court's decision to grant its admission. Specifically, this Court determined after careful consideration of the evidence that had been introduced in the suppression motion, that the speech at issue, even if protected, had been exempted. As previously stated, section 5704(17) provides an exception [to the Wiretap Act], where *any victim, witness, or licensed private detective may intercept the contents of any wire, electronic, or oral communication so long as there is reasonable suspicion that the intercepted party has committed a violent crime, and that evidence of that crime may be obtained from the interception.* 18 Pa. C.S. § 5704(17).

21

The threat of violence that had formed the genesis of Ms. Siojo's need to record a portion of her father's ranting outbursts had been reasonably determined to be credible and well-founded. Ms. Siojo testified during the suppression hearing most convincingly that she had made the recording because she had been fearful for the safety of herself and for her mother. She based her decision upon the knowledge and experience with her volatile parents, as well as the collective circumstances and information that she had received from her mother who had been sitting in the car with her during the chaotic screaming match between all four persons.

The defendant in Smith on the other hand, had been charged criminally with violating the Wiretap Act because he had secretly recording his face to face meeting with his former work supervisor utilizing a specialized app on his Smartphone in their workplace. Therefore, Mr. Smith's actions did not fall within the fear of violence based exception that had been statutorily granted; there was no violent crime, there was no reasonable suspicion that Smith's supervisor had committed a violent crime, therefore he did not fall within the exception of the Act. In fact, unlike the instant situation with Appellant, there was no alternate use of any telephone by Mr. Smith whatsoever.

To date, the Pennsylvania Supreme Court has not weighed in on the Superior Court's holding in Smith; thus their holding in Commonwealth v. Spence (J-90-2013) that the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. §§5701 *et se q.*, does not prohibit the surreptitious interception of private communications, so long as the interception is accomplished using a telephone is still the law in Pennsylvania. Specifically, the Spence Court concluded that telephones (whether smartphones, mobile phones or landline phones), are excluded from the Act's definition of "electronic, mechanical or other device[s]."

22

Because the Pennsylvania Wiretap Act only prohibits the "interception" of private communications using "electronic, mechanical or other device[s]," the Court reasoned that the Act does not prohibit or otherwise limit the interception of private communications using telephones. The Pennsylvania Supreme Court in Spence, found that the way or by whom a telephone is used to record or otherwise intercept communications is immaterial – the Act does not prohibit the use of telephones to intercept communications, period: "the language of the statute does not state that it is the use to which the telephone is being put which determines if it is considered a device." To the contrary, the Wiretap Act's statutory language may remain strictly construed as intended and as interpreted by the Pennsylvania Supreme Court in Spence.

Regardless, the legal rationale posited in the referenced Pennsylvania Superior Court's Smith decision, remains readily distinguishable and inapplicable to this Court's decision to grant its admission. Even if the cellular phone had contained a protected recording as per Smith, its admission had been proper pursuant to the applicable exemption as stated by this Court and reiterated within the reviewing appellate decision following Appellant's first direct appeal. Therefore, counsel cannot be found ineffective for not arguing the application of Smith, *supra*.

Finally, even if the logic espoused in Smith, *supra*. had been applicable to the instant matter, and qualifying exemption had unavailable, and the admission of the recording had been improperly admitted, realistically such admission of this recording had at worst constituted a form of harmless error. In Pennsylvania, the harmless error doctrine "reflects the reality that the accused is entitled to a fair trial, not a perfect trial." Commonwealth v. Hairston, 84 A.3d 657, 664, 671 (Pa. 2014). (citation and quotation omitted). The Pennsylvania Supreme Court has described the proper analysis as follows: Harmless error exists where: (1) the error did not prejudice the defendant or the prejudice was de minimis; (2) the erroneously admitted evidence

23

was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. Commonwealth v. Robinson, 721 A.2d 344, 350 (Pa. 1998) (citation omitted).

The evidence produced within the partial recording of the telephone conversation was minimal. Amid the recorded rantings of Appellant, he had acknowledged that he had stabbed a man as she shouted to his daughter his girlfriend and their brother while they traveled in a vehicle. Prior this recording, made without state action, Appellant's prior admissions of the stabbing and the surrounding circumstances that he had made to both Ms. Moore and Ms. Siojo had been explored fully during direct and cross-examination of both witnesses in front of the jury. Appellant's right to confrontation of the witnesses had been preserved.

In this instance, Appellant had possessed no realistic expectation of privacy as he yelled through the Bluetooth assisted phone to multiple persons within the vehicle. Ms. Siojo and her mother both testified as to what transpired both before, during and after the conversation in the car that became the subject matter of the partial recording. Both of their recollections were memorialized within the adopted and admitted statements provided to law enforcement. The knife that had been used to stab the victim had been recovered from the closet that Appellant had hidden in at the time of his arrest.

Appellant's guilt was additionally evidenced within the admitted and recorded telephone conversations that he had initiated with his girlfriend Ms. Lolita Moore from prison. Those calls firmly reflected his culpability and consciousness of guilt. The collective intimidating

24

correspondence that Appellant had sent to his daughter Ms. Rashada Siojo and to her mother, Ms. Lolita Moore had also explicitly demonstrated his consciousness of guilt.

Most critically, the complainant, Eugene Kellam, testified unequivocally and quite convincingly that it was Appellant who had stabbed him repeatedly following their argument over the return of a cigarette lighter. He informed the jury as to his natural safety concerns that had caused him to originally fail to appear to testify against Appellant. Mr. Kellam also remarkably reported that approximately one week before trial Ms. Lolita Moore had visited him while he had been in custody as part of her effort to convince him to drop the charges; She "visited" him after she had spoken on the phone to Appellant while he was in custody awaiting trial.

In short, 18 Pa.C.S.A. § 5704(17) provides an exception for victims and witnesses to intercept communications when they have reasonable suspicion that the intercepted party is committing, about to commit, or has committed a crime of violence, and there is reason to believe that evidence of the crime of violence may be obtained from the interception. 18 Pa.C.S.A. § 5704(17). Further, the term "crime of violence" includes aggravated assault as well as other enumerated offenses. *See* 18 Pa.C.S.A. § 5702. The Appellant here was thought to have committed aggravated assault and other serious offenses by Siojo at the time that their phone conversation was taped by her brother. (N.T., 6/17/16, pp. 19-22). Any prejudicial impact of the error was de minimis, such that the error was harmless. The record does not disclose any basis for concluding that the evidence prejudiced Appellant.

Because the cumulative trial evidence had been otherwise compelling, the contextually referenced partially recorded telephone exchange as restrictively played had contributed minimally, if at all, to the jury's decision to convict Appellant of the criminal charges. No

25

prejudice has been demonstrated. If it existed, any prejudice to Appellant was de minimis. *See, e.g.*, <u>Commonwealth v. Stetler</u>, 431 A.2d 992, 995 (Pa. 1981) (holding admission made by the appellant's child that the appellant shot the victim after the victim "busted down our door" was harmless error where the record failed to disclose any basis for concluding that the out-of-court statement prejudiced appellant and the statement supported appellant's claim of self-defense). Accordingly, if the admission of the recording was improper, the admission was harmless error. *See* <u>Robinson</u>, *supra* at 350. Therefore, this claim must fail.

## IV.    CONCLUSION

Appellant has failed to establish any legitimate basis for relief. In the absence of any meritorious challenge that can be found in the reviewable record, Appellant has not articulated any viable allegation in accordance with the requisites of a claim predicated upon counsel's ineffectiveness. For the foregoing reasons, this Court's decision to deny Appellant's requests for post-conviction collateral relief had constituted a reasonable exercise of discretion.

BY THE COURT:

ANNE MARIE B. COYLE, J.

26